**UNITED STATES, Appellee,**

**v.**

**Alvaro David de LEON DAVIS, Defendant, Appellant.**

**No. 89-2128.**

United States Court of Appeals, First Circuit.

Heard July 31, 1990.

Decided Sept. 19, 1990.

Ramon Garcia Garcia, Santurce, P.R., for appellant.

Rosa E. Rodriguez Velez, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief for appellee.

Before CAMPBELL and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.

BOWNES, Senior Circuit Judge.

This appeal follows defendant-appellant Alvaro David de Leon Davis' conviction on two counts of a three-count indictment charging him with drug offenses. Appellant was convicted of importation of cocaine into the United States in violation of 21 U.S.C. § 952(a) and of bringing cocaine on board an aircraft arriving in the United States in violation of 21 U.S.C. § 955. He was acquitted of a charge of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Appellant raises the following issues on appeal: (1) whether the evidence was sufficient to support the conviction; (2) whether the district court erred in its supplemental charge to the jury; and (3) whether certain comments during the prosecutor's closing argument were based on facts not in evidence and impermissibly prejudiced the defendant.

## I. FACTUAL BACKGROUND

Appellant was en route from his home in Panama to Spain on May 19, 1989, when his plane, Iberia Airlines Flight 920 from Costa Rica, made a scheduled stop at the Luis Munoz Marin International Airport in Puerto Rico. While appellant and the other in-transit passengers waited in the airport's "in-transit" room, a team of United States Customs inspectors checked the luggage remaining on board. Flight 920 was considered "high-risk" for drugs because it originated in Central America. Luis Gonzalez, of the Customs' Contraband Enforcement Team, spotted a suitcase with hard sides and the brand name "Ciproma," known to Gonzalez as signifying Colombian-made. Gonzalez noted a strong smell of glue emanating from the luggage, and upon inserting his probe for a drug field test, he obtained a white powder that tested positive for cocaine.

From the name tag and airline control number on the suitcase, Inspector Gonzalez learned through the airline's computer that appellant was the owner of the suitcase and that he was traveling on to Spain. Gonzalez located appellant, who agreed to accompany him to identify his suitcase. After appellant identified the suitcase as his, Gonzalez arrested him and read him his rights. DEA Special Agent Frank Fernandez arrived and took custody of appellant, who told Fernandez that the suitcase had been given to him by a friend in Panama and that he had no idea it contained cocaine. Agent Fernandez allowed appellant to use the telephone at the DEA office, where he overheard appellant place several calls to Spain and one to Panama. Appellant was heard speaking to one individual in Spain and attempting to reach another in Spain named Miguel. According to Fernandez, appellant's demeanor was calm throughout. Several days later, at appellant's appearance before the magistrate, he asked Fernandez to help him. He repeated that he did not know the suitcase contained cocaine and claimed that the people in Panama who gave him the case had told him to deliver it to a Miguel in Barcelona. One of

these people, appellant told Fernandez, was a friend of appellant's and was either Panamanian or Colombian.

On inspection of the suitcase DEA Special Agent Enrique Nieves noted that it was very heavy, had a foul, glue-type odor and contained numerous old and dilapidated record albums. The cocaine had been packed within the hard walls of the suitcase with masking tape. The gross weight of the cocaine was 2,271 grams, a little over four pounds. According to Nieves, the drug was 87% pure, compared to the 10–20% purity of cocaine sold on the street, and had a street value of between $800,000 and $1.6 million in Spain, where cocaine sells for almost four times as much as it does in the United States.

## II. SUFFICIENCY OF THE EVIDENCE

The standard of review of a sufficiency claim is " 'whether, taken as a whole and viewed in the light most favorable to the government, the evidence and all legitimate inferences therefrom would allow a rational trier of fact to find guilt beyond a reasonable doubt.' " *United States v. Molinares Charris*, 822 F.2d 1213, 1218 (1st Cir.1987), *cert. denied*, — U.S. —, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989) (quoting *United States v. Luciano Pacheco*, 794 F.2d 7, 10 (1st Cir.1986)).

■ Appellant's sufficiency challenge focuses on the element of knowledge. He claims that the government failed to prove that he knew there was cocaine in the suitcase. According to his trial testimony, appellant had indicated to his new Colombian friend Daniel Avila that he was traveling to Madrid and was thinking of buying a suitcase there. Avila offered to lend him a suitcase that appellant could leave with Avila's son Christian once appellant arrived in Madrid. According to appellant, training and other work related to his job as assistant manager of a Panamanian television station required his travel to Spain. The trip on which he was arrested would have

been his third to Spain in six months. The record albums in his suitcase, he claimed, were of a new Panamanian reggae singer named Renato, whom appellant planned to promote in Spain.

In contrast to appellant's testimony stood that of the government agents. Agent Nieves stated that the record albums were numerous, old, and in bad condition.[1] Based on his drug enforcement experience, Nieves testified that record albums were commonly used by traffickers as ballast to hide the excess weight of the cocaine. The strong odor of glue, he stated, was also consistent with drug traffickers' efforts to elude detection. In addition, whereas appellant maintained at trial that he had planned to leave the suitcase in Madrid with Avila's son Christian, Agent Fernandez remembered appellant's telling him that he had been told to take the suitcase to a Miguel in Barcelona.

■ The case thus turned on the credibility of the witnesses and the inferences to be drawn from the evidence. Proof of appellant's knowledge that he was carrying cocaine could be inferred from the circumstantial evidence, *United States v. Mateos-Sanchez*, 864 F.2d 232, 238 (1st Cir.1988), and it was for the jury "to assess the credibility of the witnesses and decide what inferences could be fairly drawn." *United States v. Molinares Charris*, 822 F.2d at 1220. The jury apparently disbelieved appellant's story and believed the government's witnesses, drawing the same inferences as the agents had drawn from evidence of old record albums and the strong smell of glue—that appellant was knowingly participating in drug trafficking. This conclusion was not unreasonable in light of the evidence and was sufficient to convict.

## III. THE SUPPLEMENTAL CHARGE TO THE JURY

At 4:15 p.m. on the second day of trial, the jury, after final instructions from the district court, commenced deliberations.

1. The records, returned to appellant after his arrest, were not put in evidence at appellant's trial.

Several hours later the jury returned with a question about the difference between the elements of counts one and two, possession and importation. After reinstruction on both charges, the jurors deliberated for another forty-five minutes until, at 8:15 p.m., they notified the court that they had been unable to agree. They were then sent home for the night.

The following morning, deliberations resumed. At noon, the jury indicated to the court that a verdict had been reached on one count and that as to the other two "it has been impossible to get a unanimous verdict." The court asked counsel for their views. Defense counsel made a motion for acquittal, which was denied. The government requested that the jury be advised to continue to deliberate. Defense counsel then asked that the entire set of jury instructions be read again before sending the jury back to deliberate. In the alternative, he requested a mistrial.

The trial court called the jury in and asked at length and with care about the possibility of reaching a verdict:

[THE COURT]: First of all, let me say that I don't want—I'm going to ask you one or two questions; but I don't want, and I repeat, I don't want that you tell me how you stand, the way you are divided. I don't want that. I have your note that you say you agree as to one of the counts and you have not agreed to the others.

As to the ones you have not agreed, I don't want you to tell me how you stand, no way.

Now, I would like to know whether— And I will get the foreperson to answer this question—I would like to know whether if you feel further deliberations —It's early afternoon—could maybe resolve the differences that you have? So, if you think that that is a possibility, certainly, I will send you back again to further deliberate. And it appears to me that it would not be a bad idea to do that, unless you are hopelessly deadlocked on whatever you are disagreeing.

Do you feel that by going back you may reach an agreement?

Ultimately the foreperson replied, "Assuming we might, can get, reach a verdict, but really can't explain to you at this time if that is going to happen or not. It's a possibility, maybe in the afternoon." The court then instructed as follows:

Very well. Fine. Thank you.

Then, I'm going to order you to go back to further deliberate and doing that I'm going to again tell you this. I am going to ask you to resume your deliberations in an attempt to return a verdict. As I told you before, each of you must agree in order to return a verdict. You have the duty to consult with one another and to deliberate with a view to reach an agreement, if this can be done without violating your individual judgment. Each juror must decide the case for himself or herself, but only after an impartial consideration of all the evidence with his or her fellow jurors.

And during the course of your deliberations, do not hesitate to examine your own views and change your opinion if convinced it is erroneous. No juror, however, should surrender his or her honest conviction as to the weight of the effect of the evidence solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict.

In other words, I read you this charge. Deliberate, but do not surrender your honest opinion. And that's what I'm going to do now. Go and deliberate further, in an attempt to reach a verdict, if you can do so without violating your individual conscience. If you cannot surrender your opinion, don't surrender it. If you can, you do by reason and examination of the evidence, but nobody is pressuring you and you should not be pressured.

The jury resumed deliberating and at 3:15 p.m. returned with verdicts of not guilty on count one and guilty on counts two and three.

 Appellant, calling this supplemental charge a modified "Allen" charge, challenges both the content of the instruction and the district court's refusal to grant a mistrial. We note that defense counsel did

not object to the instruction below. The plain error standard therefore governs our review. *United States v. St. Germain,* 680 F.2d 874, 877 (1st Cir.1982). Under this rule, the alleged error warrants reversal only if, when considered in the context of the entire trial, it could be said to "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). Applying this standard, we find that there was no plain error here.

Although appellant complains that the charge at issue fails to comport with the one we approved in *United States v. Flannery,* 451 F.2d 880 (1971), use of the *Flannery* charge is premised upon a deadlocked jury. *See, e.g., United States v. Nichols,* 820 F.2d 508 (1st Cir.1987); *United States v. Angiulo,* 485 F.2d 37 (1st Cir.1973).[2] The jury here informed the court that agreement remained "a possibility, maybe in the afternoon." To say that the jury was deadlocked is not a fair characterization. In the circumstances, the court's advice to the jurors that they try again to agree if they could do so without violating their individual consciences was an altogether appropriate response. We find no error.

■ The motion for a mistrial was properly denied as well. A mistrial request when a jury is arguably deadlocked is addressed to the sound discretion of the trial court, *United States v. Hotz,* 620 F.2d 5 (1st Cir.1980), and our conclusion that the trial court acted properly in reinstructing the jury leads us to the same conclusion with respect to its denial of a mistrial.

## IV. THE PROSECUTOR'S CLOSING ARGUMENT

■ Appellant's final contention concerns comments made by the prosecuting attorney during the rebuttal portion of her closing argument to the jury. These comments, appellant asserts, constitute improper argument based on facts not in evidence. We set forth the pertinent portion of the rebuttal:

[Ms. Rodriguez, for the Government]: And all of these stories that [appellant] has concocted for us does [sic] not make sense. I will give a story that makes sense, and it just happens to be the true story of this case, a simple story. I commit myself that it is a simple story.

This man is an international drug trafficker, and he's a partner with Daniel Avila.

MR. GARCIA: Objection, your Honor.

THE COURT: Overruled.

MS. RODRIGUEZ: And this man has gone a few times to Spain to sell cocaine. And the drug is provided. The cocaine is provided by Daniel Avila from Colombia. And they go to Spain because in Spain the price of cocaine is almost three times higher—

MR. GARCIA: Objection.

THE COURT: Overruled.

MS. RODRIGUEZ: —than the price of cocaine in any other part of the world.

You remember Enrique Nieves testifying to the street value of that cocaine. You remember that he said that it was almost $45,000 a kilo. That is why he goes to Spain. He's going to get more money there.

And defense counsel told you why take the risk when he has a child and when he has wife? I tell you now that he thought that the risk was worth it. Because he's an executive, but he only makes $800, $1,000 a month. And what is that compared to $1.6 million of cocaine in three or four trips that he has made in less than six months?

MR. GARCIA: Objection, your Honor. We're talking about one trip.

THE COURT: The evidence only shows one trip, but she can argue about

---

**2.** In *United States v. Flannery,* 451 F.2d 880 (1st Cir.1971), we advised that the court, on reinstructing a deadlocked jury, should address its remarks on re-examining juror positions to the majority as well as the minority; should remind the jury of the burden of proof; and should avoid language that could be interpreted by the jurors as instructing them that they must agree. *Id.* at 883.

the other trips, that is, that he made other trips.

These comments approach the outer limit of permissible argument. There was no evidence that appellant's prior trips were drug-related. A conclusion that they also involved transporting cocaine was therefore based primarily on conjecture, but not wild speculation.

What was in evidence were appellant's passport and his admission to four separate trips to Spain within seven months. He called no witnesses to support his claim that these trips were required by his job. His contention that they were innocent business trips was thus open to challenge. Moreover, this challenge came on rebuttal in response to appellant's version of events, rather than as part of the government's theory in its argument-in-chief. *See United States v. Garcia,* 818 F.2d 136, 143 (1st Cir.1987) (prosecutorial comments made on rebuttal argument within "permissible scope of the prosecutor's right to comment on the plausibility of the defense theory").

Even where the government's argument goes beyond the direct evidence, the trial court's instructions to the jury may be sufficient to correct any possible prejudice. *United States v. Mateos–Sanchez,* 864 F.2d at 241. We believe that to be the case here. At the outset of the trial, the court instructed the jury preliminarily that the arguments of counsel were not evidence. Immediately prior to the closing arguments, the court repeated that "the argument of counsel is not evidence. They will try to persuade you to see the case in the light that they think you should examine this case." Finally, on the heels of the prosecutor's rebuttal, the court instructed during its final charge, "I repeat, statement and argument of counsel are not evidence in the case, unless made as an admission or stipulation of fact." The jury was amply admonished on this point, and it is unlikely that any prejudicial taint remained to infect the verdict. Appellant's acquittal on one count supports the conclusion that the jury was not influenced by the prosecutor's rebuttal comments:

This indicates that the jury, despite the conduct of the prosecutor[ ], was able to consider objectively whether the government had proven each element of each crime.... We thus believe that the jury was able to separate the wheat of the government's case from the chaff of the prosecutor[']s[ ] closing argument[ ].

*United States v. Doe,* 860 F.2d 488, 495 (1st Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1961, 104 L.Ed.2d 430 (1989).

*Affirmed.*