UNITED STATES, Appellee,

v.

Noel MORALES–DIAZ,
Defendant, Appellant.

No. 90–1306.

United States Court of Appeals,
First Circuit.

Submitted Nov. 21, 1990.

Decided Feb. 15, 1991.

Martha R. Reeves, for appellant.

F. Mark Terison, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., was on brief, for appellee.[*]

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

BOWNES, Senior Circuit Judge.

This is an appeal from defendant-appellant Noel Morales–Diaz's convictions, after a jury trial, for possession of more than 500 grams of cocaine with intent to distribute and for conspiracy to do the same. Appellant raises several issues relative to his trial and sentence. Finding no error, we affirm.

## I. THE FACTS

On July 23, 1989, Agent Gerard Brady of the Maine Bureau of Intergovernmental Drug Enforcement (BIDE) was working undercover in Saco, Maine. Pursuant to a deal previously arranged by other agents, Brady and an informant drove to a commuter parking lot in Saco to wait for two Hispanic men who were to sell them 18 ounces of cocaine for $19,500. Other undercover agents were on the scene setting up surveillance, including BIDE agent Guy Godbout, who operated a video camera. Brady, who parked his own car about thirty feet away, sat in the passenger seat of the informant's car while they waited.

The meeting had been set for 1 p.m. and at 2:15 the defendant and Pedro Alvarez–Alvarez arrived, with defendant driving the car. Defendant, appearing to recognize the informant, approached and greeted him in English. He then introduced himself to Brady as Tony. While Alvarez remained in the car, defendant asked Brady if he had the money. Brady replied that he did, that it was in the trunk, and asked defendant if he had the cocaine. Defendant said yes and motioned to Alvarez, who got out of the car, walked around to the front, knelt down, and appeared to reach underneath the frame. Alvarez then went to the driver's side of the informant's car and threw a dark plastic bag towards Brady. Defendant and Alvarez gestured that that was the cocaine. Saying he wanted to make sure, Brady cut open the bag. He then said it looked good and that he would get the money from his trunk. Defendant accompanied Brady to the rear of Brady's car. When the trunk was opened, pursuant to prearrangement with the other agents, defendant and Alvarez were arrested.

At defendant's trial, Agent Brady testified to the account above. Agent Godbout took the stand and his videotape of the drug transaction was played for the jury. Wayne Buck, a forensic chemist, testified that the total weight of the cocaine was 538.7 grams.

Defendant himself was the only witness for the defense. He testified that he did not knowingly participate in any sale of drugs. According to him, he drove Alvarez to Maine that day from their home in Lawrence, Massachusetts, at the latter's re-

[*] This case was submitted on the briefs. Oral argument was waived.

quest. He did not know why Alvarez wanted to go to Maine. When he drove into the parking lot in Saco, he told Brady he was lost and asked him for a map, speaking only Spanish to Brady. He testified that the word "coke" was never used, that he did not know there was cocaine in the car, and that he did not see Alvarez put anything in the informant's car. Brady's testimony was a lie, according to defendant. On rebuttal, Agent Brady contradicted defendant. He testified that there was no conversation with defendant about directions, that only English was spoken, and that defendant was looking inside the informant's car when Alvarez threw the cocaine into it.

Upon conviction, defendant was sentenced to 327 months imprisonment. The district court adopted the calculations set forth in the presentence investigation (PSI) report. The PSI report grouped the substantive and conspiracy counts together pursuant to U.S.S.G. § 3D1.2(b)(1) and calculated a base offense level of 26 by reference to U.S.S.G. § 2D1.1(a)(3) and the amount of cocaine involved. No adjustments were made to the base offense level.

The PSI report concluded that, because of two prior felony convictions, defendant was a career offender pursuant to U.S.S.G. § 4B1.1. One conviction was under the laws of Puerto Rico for sale of marijuana; the other was for armed robbery in Lawrence, Massachusetts. Because the statutory maximum for the instant offense is forty years, defendant's offense level as a career offender was determined to be 34, *see id.*, and his criminal history category VI. The applicable guideline range was determined to be 262 to 327 months pursuant to the Sentencing Table in U.S.S.G. Ch. 5, Part A.

At the sentencing hearing, defendant's only objection to the PSI report was to the conclusion that he was not entitled to a downward departure, arguing that his family circumstances and the fact that he was a courier in the transaction warranted departure. (His other, previous objection to the accuracy of certain prior Massachusetts district court convictions, had been cured and withdrawn.) The government recommended a sentence at the upper end of the guideline range, noting that defendant had been in prison or charged with crimes during eight of the last ten years and was on parole at the time of the instant offense.

Adopting the undisputed facts and calculations in the PSI report, the district court found that defendant was a career offender with a sentencing range of 262 to 327 months. The court imposed the maximum term, stating that its "principal objective" was to "insulate the public ... for the maximum period possible" from one with appellant's demonstrated propensity for long-term drug trafficking.

## II. TRIAL ISSUES

Defendant has raised a host of issues on appeal. We discuss only those having some substance.

■ A. Defendant claims that his sixth amendment right to an impartial jury was violated. · Several jurors were selected who had previously served on an unrelated drug case, involving a different Hispanic defendant, at which the same government witnesses had testified and which had resulted in a conviction. According to defendant, these jurors were more likely to convict him because their prior guilty verdict indicated that they had already determined favorably the credibility of the government's witnesses. This issue was not raised below; we therefore review it only for plain error. *United States v. Figueroa*, 818 F.2d 1020, 1025 (1st Cir.1987).

During the jury voir dire, it was revealed that thirteen members of the panel were familiar with BIDE agents Brady and Godbout through previous jury service. The district court then asked if any of these jurors would have difficulty being fair and impartial in this case, if they would have any tendency to credit the testimony of the witnesses they had previously heard over other witnesses, and, specifically, if any of them thought he would be more likely to believe a witness he had already heard testify than someone he had

not. There was no affirmative response to these questions.

At a sidebar conference defense counsel asked which witnesses the jurors had previously heard and what had been the outcome of the case. The prosecutor stated that Agents Brady and Godbout had testified during the *Ramirez* trial, a case involving similar charges that had resulted in guilty verdicts. The judge then asked defense counsel if he wanted any further inquiry made of the jury and he replied that he did not. Finally, the court inquired of the jurors if any of them knew of any reason to be concerned about his ability to serve fairly and impartially in the case. No one replied affirmatively. None of the thirteen jurors was challenged for cause by the defense. Of the twenty-eight names drawn, four of the jurors who had served on the *Ramirez* trial were ultimately selected for appellant's jury.

Although we have not previously faced the precise issue presented here, in *United States v. Carranza*, 583 F.2d 25 (1st Cir. 1978), we held that the defendant was not deprived of an impartial jury where members of the jury panel who had served on a previous case involving the same government witnesses and some of the same evidence were eliminated by peremptory challenges. There had been no showing that the previous case involved the same transaction giving rise to the defendant's alleged offense. No jurors from the prior case actually sat on Carranza's jury. Canvassing the law in this area, we observed, where former jurors were actually chosen to serve at defendant's trial:

> [T]he circuit courts, while expressing disapproval of the practices of using jurors who had served in prior similar cases involving the same government witnesses, have been loathe to upset convictions where such use of jurors has occurred. The rule generally followed is that, unless a specific showing of bias or prejudice is made, the fact that a juror sat in a prior case involving the same government witnesses and the same type of crime will not be grounds for disqualification *per se* unless the defendant is

charged with an offense arising from the same transaction.

*Id.* at 28 (citations omitted) (emphasis original).

Defendant does not claim that his case involved the same transaction as the *Ramirez* case. Neither does he point to any specific prejudice. The most he appears to suggest is that the fact that both he and Ramirez are Hispanic is sufficient to take this case outside the operation of the general rule and to create implied bias. We are not persuaded to depart from the rule announced in *Carranza* on that basis. The trial court's searching voir dire of the members of the panel who had heard the government's witnesses in a previous case was keyed to exposing any possible bias in the government's favor. None was revealed. "Although we do not blindly accept [jurors'] avowals of impartiality, to justify disregarding them there must be solid evidence of distinct bias." *United States v. Angiulo*, 897 F.2d 1169, 1183 (1st Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990).

Having failed to object below, defendant's burden under the plain-error standard is to show that the presence of these jurors undermined the fairness of his trial and contributed to a miscarriage of justice. *United States v. de Leon Davis*, 914 F.2d 340, 344 (1st Cir.1990). On the entire record, we are satisfied that using these jurors was not plain error.

■ B. Defendant claims his request for an entrapment instruction was improperly denied. His argument is that the government initiated the drug deal and that the amount of money offered by the agents for the purchase of the cocaine—$19,500—was so great as to constitute an improper inducement to commit the offense.

■ The settled law is that an entrapment defense and the corresponding right to a jury instruction thereon requires proof of government inducement to commit the crime and a defendant's lack of a predisposition to commit it. *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988). The question is,

did the government "corrupt[ ] an otherwise unwilling participant"? *United States v. Murphy*, 852 F.2d 1, 5 (1st Cir. 1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989). The defendant has the initial burden of producing an affirmative answer to this question. *Id.* That burden was not only not met in this case, it was not even approached.

The heart of defendant's defense was that he did not know that a cocaine deal was occurring. According to his testimony, he thought he was asking Agent Brady for directions. The closest he came to hinting at an entrapment defense was his answer on cross-examination that he thought he had been set up. Even if this met the legal definition for entrapment, which it does not, "[c]onclusory and self-serving statements do not satisfy the defendant's burden of production." *United States v. Kakley*, 741 F.2d 1, 4 (1st Cir.), *cert. denied*, 469 U.S. 887, 105 S.Ct. 261, 83 L.Ed.2d 197 (1984).

From defendant's testimony and his attorney's closing argument, his defense was that he was an unwitting participant in a drug deal, not an unwilling one. Moreover, nothing in the government's case supported an issue of entrapment. Where the evidence is insufficient to justify an entrapment instruction, the trial court does not err in refusing to give it. *See United States v. Rodriguez*, 858 F.2d 809, 814 (1st Cir.1988).

■ C. Defendant's other trial issues deserve but short shrift. He claims that he was denied the effective assistance of counsel by his trial lawyer's failure to seek suppression of the videotape of the offense. Absent special circumstances, not present here, we do not consider ineffective assistance claims in the first instance on appeal. *United States v. Latorre*, 922 F.2d 1, 9 (1st Cir.1990); *United States v. Paz Uribe*, 891 F.2d 396, 398 (1st Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 2216, 109 L.Ed.2d 542 (1990).

■ The two remaining claims of legal error at trial were not raised below by defendant and are therefore subject to the plain error standard of review. Defendant complains that he was deprived of adequate counsel by the court's failure to provide him with an attorney fluent in Spanish. Not having sought bilingual counsel at his trial, defendant, to prevail, must show that a miscarriage of justice occurred. *United States v. de Leon Davis*, 914 F.2d at 344. He cannot. At the outset of the trial, the district court provided defendant a sworn interpreter and headphones for simultaneous translation from English to Spanish. Defendant's testimony was given in Spanish and translated into English. There is nothing in the record of the proceedings to indicate that this method of communication hampered the defense or in any way prejudiced defendant, and defendant has not directed us to any evidence of prejudice. We find no error.

■ Finally, defendant claims that the district court unfairly commented on his credibility by reminding him in front of the jury that he was still under oath when he resumed the witness stand following an overnight recess. Again, no objection was made to this comment at the time of trial, and we are hard-pressed to find error of any kind, plain or otherwise.

When defendant resumed the stand for cross-examination, the district court stated: "Mr. Diaz, I will advise you that you remain under the oath that you took, at the commencement of your testimony yesterday, to tell the truth; you understand?" Although defendant acknowledges the propriety of reminding a witness retaking the stand of his oath, this admonition, he claims, went too far by adding the words, "to tell the truth." We think the content of the admonition was innocuous and comes "within the scope of [the district court's] discretionary trial-management authority." *United States v. Moore*, 923 F.2d 910, 913 (1st Cir.1991) (finding no error in trial court's decision to allow jury lunch break after government's closing argument).

## III. SENTENCING ISSUES

■ Defendant challenges his sentence in two respects. First, he contends that

the district court erred in counting his Puerto Rico conviction towards career offender status pursuant to U.S.S.G. § 4B1.1. His argument is that, because Puerto Rico is not a state, the conviction is not of an "offense under a federal or state law" as required under § 4B1.2, the definitional section applying to § 4B1.1.

This argument was not made in the district court. Although there are "exceptional case[s]" in which we may decide purely legal issues in the first instance, *United States v. Krynicki*, 689 F.2d 289, 291 (1st Cir.1982), this is not such a case. Not only did defendant fail to raise this claim below, he presents no developed argumentation of it to this court. He simply asserts the syllogism that (1) to qualify under the career offender guideline, the prior felony offenses must be state or federal offenses; (2) Puerto Rico is not a state; and (3) therefore his Puerto Rico conviction is not a prior felony offense under the career offender guideline. Defendant completely ignores the body of case law recognizing that Congress has accorded the Commonwealth of Puerto Rico "the degree of autonomy and independence normally associated with States of the Union...." *Examining Board of Engineers, Architects and Surveyors v. Flores de Otero*, 426 U.S. 572, 594, 96 S.Ct. 2264, 2277, 49 L.Ed.2d 65 (1976). Puerto Rico has been treated as a state in a variety of contexts. *See, e.g., Fred v. Roque*, 916 F.2d 37, 38 (1st Cir. 1990) ("state" for purposes of sovereign immunity); *United States v. Lopez Andino*, 831 F.2d 1164, 1168 (1st Cir.1987) ("state" for purposes of double jeopardy), *cert. denied*, 486 U.S. 1034, 108 S.Ct. 2018, 100 L.Ed.2d 605 (1988); *Cordova & Simonpietri Ins. v. Chase Manhattan Bank*, 649 F.2d 36, 38 (1st Cir.1981) ("state" for purposes of Sherman Act). In the absence of any reasoned attempt by defendant to persuade us that the Sentencing Commission meant to exclude felony convictions in Puerto Rico Commonwealth Courts for enhancement purposes, we cannot say that this issue is " 'so compelling as virtually to insure appellant's success.' " *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 894 (1st Cir.1979) (citation omitted). We thus decline to address it.

■ Finally, defendant claims that a factual error in the PSI report prevented him from receiving an offense level reduction as a minor or minimal participant in the offense. The report recites that defendant, rather than Alvarez, handed the cocaine to Agent Brady. Again, this complaint was not made to the district court and is subject to plain-error review.

Despite the asserted factual mistake, the record does not support a finding that defendant had a minor or minimal role in the offense. He drove the car containing the cocaine, initiated the contact with the buyers in the parking lot, gave the signal to Alvarez to produce the drug, and accompanied Agent Brady to the latter's car for what he expected would be payment. The district court's ruling that the base offense level was not subject to adjustment was not clearly erroneous. *See United States v. Wright*, 873 F.2d 437, 444 (1st Cir.1989).

Moreover, a reduction for his role in the offense would not have helped defendant. As a career offender, his offense level of 34, derived from the table in § 4B1.1, is greater than the level that would result if he had received the greatest mitigating role-in-the-offense adjustment, reducing the offense level from 26 to 22. *See* U.S.S.G. § 3B1.2(a) (providing 4-level decrease for minimal participant). "If the offense level for a career criminal from the table ... is greater than the offense level otherwise applicable, the offense level from the table ... shall apply." U.S.S.G. § 4B1.1. There was no prejudice and, *a fortiori*, no plain error.

*Affirmed.*