960 F.2d 143
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Robert P. RIVIEZZO, Petitioner, Appellant,
v.
UNITED STATES OF AMERICA, Respondent, Appellee.
 No. 91-1835.
 United States Court of Appeals,
First Circuit.
 April 13, 1992
 
 James E. Duggan, by appointment of the Court, on brief for appellant.
 Peter E. Papps, First Assistant United States Attorney, with whom Jeffrey R. Howard, United States Attorney, was on brief for appellee.
 Before Torruella, Circuit Judge, Coffin and Campbell, Senior Circuit Judges.
 COFFIN, Senior Circuit Judge.
 
 
 1
 Appellant Riviezzo appeals from the denial of his motion under 28 U.S.C. § 2255 to set aside his guilty plea and vacate his sentence for the crime of unlawfully transferring a silencer. Appellant argues that his trial attorney provided ineffective assistance of counsel (1) by failing to adequately investigate and raise the defense of entrapment; (2) by failing to interview a witness who allegedly would have supported such a defense; and (3) by wrongly informing appellant that uncharged conduct would increase his sentence under the Sentencing Guidelines.
 
 FACTS
 
 2
 The district court appointed counsel to represent appellant on the § 2255 motion and held an evidentiary hearing. Appellant, his former trial attorney, Edward Miller (a friend of appellant) and Dennis Leahy (an agent of the Bureau of Alcohol, Tobacco and Firearms) testified. The hearing revealed the following. In the late summer of 1988, an informant of the Bureau of Alcohol, Tobacco and Firearms gave to Miller a picture of a device he wished to have manufactured. Miller took the drawing to appellant, a skilled machinist. According to appellant and Miller, they could not figure out what the drawing was supposed to represent. About ten days later, the informant and Miller went to appellant's house. There, it became clear to appellant that the device was a silencer. At this time, appellant refused to make it.
 
 
 3
 According to appellant, the informant next telephoned him on two separate occasions asking him to reconsider; each time appellant refused. Finally, after the informant went back to appellant's house and increased the price from $300 per silencer to $500, appellant agreed to make the silencers. In a series of at least three separate transactions, appellant produced and sold five silencers to the informant and Leahy. Appellant also agreed to manufacture an additional ten silencers. He was arrested in January 1989. In all, he had made 15 silencers.
 
 
 4
 Appellant stated that the reason he had chosen not to proceed to trial was that he did not want to spend a substantial amount of time in jail. He testified that he had discussed all of the facts surrounding his arrest with trial counsel. Additionally, appellant stated that counsel, like the three other attorneys with whom appellant previously had consulted, had told him that if he chose to go to trial he probably would not win because of the number of silencers he had made.
 
 
 5
 Appellant then recounted his version of what had occurred at the sentencing hearing. He stated that when the trial judge raised the issue of an entrapment defense, trial counsel told appellant that it was too late to change the guilty plea. Portions of the transcript of this hearing are appended to the § 2255 motion. They reveal that in response to the judge's questions about the possibility of such a defense, trial counsel informed the court that he and appellant had discussed the issue of entrapment and that he believed that such a defense would not be successful "in terms of the entire picture." The trial judge then asked appellant whether he had made silencers for any one other than the government. Appellant stated that he had not.
 
 
 6
 At the § 2255 hearing, trial counsel elaborated on his advice that appellant plead guilty. He consulted the notes he had made at the time and testified, in contrast to appellant, that appellant had agreed to make the silencers during the second conversation between appellant and the informant. As for the Sentencing Guidelines, counsel was concerned that if appellant were convicted on four separate sales of the silencers he might receive a sentence greater than the one he would receive if he pleaded guilty to just one sale. Another factor in this advice was that appellant's admission of the offense and his cooperation with the government probably would lower the offense level under the Guidelines.
 
 
 7
 As for the legal underpinnings of an entrapment defense, trial counsel stated that he had believed that such a defense required proof that the government had engaged in misrepresentation, deceit or other outrageous conduct. Counsel also testified that he had thought that the presence of a series of sales might defeat such a defense. Counsel finally stated that he would never have told appellant that he could not withdraw his guilty plea.
 
 
 8
 Miller testified as to the initial contact by the informant and the subsequent visit to appellant. This was the extent of his direct knowledge concerning the events surrounding the sale and manufacture of the silencers. There is attached to the § 2255 motion an affidavit signed by Miller. In it, he corroborates appellant's account of the number of times appellant refused to make the silencers. The affidavit makes plain that Miller is recounting information that he received from appellant after appellant's arrest.
 
 
 9
 Leahy testified that appellant had agreed to make the silencers after only one refusal. According to Leahy, the informant had told Leahy that appellant would make silencers "for the right price." Leahy also stated that in discussions between himself and appellant, appellant had shown an extensive knowledge concerning the manufacturing of silencers.
 
 DISCUSSION
 
 10
 "Our review of the finding by the district court as to the adequacy of counsel's representation is limited to the question whether that finding was clearly erroneous." Ouellette v. United States, 862 F.2d 371, 377 (1st Cir. 1988); McCarthy v. United States, 764 F.2d 28, 30 (1st Cir. 1985) (per curiam). In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court held that the standards set out in Strickland v. Washington, 466 U.S. 668 (1984), applied to cases in which a defendant attacks the effectiveness of counsel arising out of the plea process. Hill, 474 U.S. at 57. Thus, counsel's performance is judged under "an objective standard of reasonableness" and courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688, 689. As for the prejudice prong of the Strickland test, appellant must show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See Hill, 474 U.S. at 59 (footnote omitted). Specifically, the resolution of this inquiry turns on whether the defense "likely would have succeeded at trial." Id.
 
 
 11
 A. The Entrapment Defense.
 
 
 12
 To prevail on an entrapment defense, appellant must show that the government induced him to commit the crime and that he was not predisposed to engage in the criminal conduct. See Mathews v. United States, 485 U.S. 58, 62-63 (1988); see also Sorrells v. United States, 287 U.S. 435, 441-42 (1932). The burden is on a defendant initially to demonstrate his unreadiness to commit the crime with which he is charged. United States v. Coady, 809 F.2d 119, 122 (1st Cir. 1987). That is, he must present evidence that indicates that the government persuaded "an otherwise unwilling participant." See United States v. Morales-Diaz, 925 F.2d 535, 538-39 (1st Cir. 1991); United States v. Murphy, 852 F.2d 1, 5 (1st Cir. 1988).
 
 
 13
 Appellant claims that counsel's "understanding" of the law of entrapment fell outside the range of "reasonable professional assistance" and, thus, violated the first part of the Strickland test. He points to two errors to support this contention. First, he relies on Sherman v. United States, 356 U.S. 369 (1958). In Sherman, a defendant agreed to secure drugs for a government informant only after "a number of repetitions of the request." In holding that defendant had established an entrapment defense, the Court stated that the fact that a series of sales had occurred prior to the sales for which defendant was convicted made no difference. Id. at 374. Based on Sherman, appellant avers, counsel's belief that the series of transfers of the silencers would defeat an entrapment defense was wrong.
 
 
 14
 Appellant's second argument is that counsel provided ineffective assistance by advising appellant to plead guilty on the ground that it would not be possible to demonstrate that the government had engaged in "outrageous" behavior. Counsel's belief that entrapment requires such a showing, appellant maintains, is contrary to the law. Rather, entrapment requires proof only of "government inducement." See Morales-Diaz, 925 F.2d at 538.
 
 
 15
 "Only where a defense decision is completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy, is further review into counsel's competence required." United States v. Ortiz Oliveras, 717 F.2d 1, 4 (1st Cir. 1983). Although the reasons for counsel's advice concerning the adequacy of an entrapment defense did reflect a misapprehension of the law, the presence of a series of sales, for example, was nonetheless not an irrelevant consideration. Such evidence, apart from its "legal" significance, might well have provoked a jury to find appellant guilty. Indeed, three other attorneys so appraised the case. This type of "tactical decision[ ], whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance." Id. at 3.
 
 
 16
 As for the prejudice prong of the Strickland test, we find that there is not a reasonable probability that, but for counsel's advice, appellant would not have pleaded guilty. The government had a strong case against appellant, especially in the form of agent Leahy's testimony that appellant refused to make the silencers only once before taking the bait. In addition, Miller's testimony to the contrary would not have provided much help to appellant's cause. First, Miller knew only what appellant had told him about the number of times that appellant refused to make the silencers. Second, as the government correctly points out, Miller's version of the facts differed in some respects from that of appellant, leaving Miller open to the possibility of being impeached at trial. It is just as likely that it was this state of the evidence, rather than counsel's inaccurate view of the substantive law, that influenced appellant's decision to plead guilty.
 
 
 17
 Also, we do not think it likely that the defense would have succeeded. "It is well settled that mere solicitation cannot be equated with entrapment...." Coady, 809 F.2d at 122; see Sorrells, 287 U.S. at 441. Indeed, the government's evidence tended to show that once the informant "sweetened the pot," appellant's behavior in agreeing to make the silencers could hardly be described as unwilling. See Coady, 809 F.2d at 122. Although the uncontradicted testimony of appellant that he had never before made a silencer is some evidence that he had no prior predisposition to commit the crime, it hardly makes him an "unwary innocent." See Sherman, 356 U.S. at 372; Mathews, 485 U.S. at 63. In fact, the jury could have found that this testimony was undermined by agent Leahy's statement that appellant demonstrated an impressive aptitude concerning the process by which silencers are made and by the informant's reference to appellant's willingness to engage in the manufacture of silencers for the right price.
 
 
 18
 B. Failure to Interview Miller.
 
 
 19
 The failure to interview a witness must result in the deprivation of a "viable defense" in order to render counsel's omission ineffective. See United States v. Porter, 924 F.2d 395, 397 (1st Cir. 1991). As we pointed out, Miller could only testify, on direct knowledge, concerning appellant's first refusal. The additional testimony would consist of what Miller had been told by appellant. It is difficult to see how, given the government's case, this latter information would have made the entrapment defense any more viable than it already was.
 
 
 20
 C. Sentencing Prediction.
 
 
 21
 An inaccurate prediction concerning a sentence is not enough, standing alone, to demonstrate ineffective assistance of counsel. See Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986) ("gross mischaracterization" of the likely outcome of proceeding to trial required to demonstrate counsel ineffective in plea advice); United States v. Arvanitis, 902 F.2d 489, 494 (7th Cir. 1990) (incorrect estimate of applicable offense severity level under Guidelines not enough to show counsel ineffective within meaning of Strickland ).
 
 
 22
 Here, the alleged error was trial counsel's prediction that the total number of silencers would be used to calculate the offense level under the Guidelines. Apparently, at the time, the number of silencers did not increase the offense level. Without more, this type of miscalculation is insufficient to demonstrate ineffective assistance of counsel.
 
 
 23
 For the foregoing reasons, the district court's denial of appellant's § 2255 motion is Affirmed.