Anthony G. SAVILLE, Defendant-Appellant,

v.

UNITED STATES of America, Appellee.
No. 7061.

United States Court of Appeals
First Circuit.

Heard June 3, 1968.

Decided Sept. 12, 1968.

---

John F. Dobbyn, Roslindale, Mass., by appointment of the Court, for appellant.

Albert F. Cullen, Jr., Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant was convicted by a jury on two counts of passing counterfeit ten dollar bills[1] and was given five year sentences to be served concurrently. The government's case was substantially as follows. One Brennan, a clerk in the J. M. Fields store in Natick, Massachusetts, identified the defendant at the trial as the person who had given him a counterfeit ten dollar bill in payment for a small purchase made on November 21, 1966. Also, he identified the defendant from a spread of eight police mug shots shown to him by government agents four days after the purchase. In support of the second count, Debra Steeves, a young clerk in another department of the same store, identified the defendant at the trial as the one who gave her a counterfeit ten dollar bill on the same day in payment for a ninety-nine cent purchase. Four days after the alleged purchase she too identified the defendant from the same police photographs that had been shown to Brennan.

In addition there was evidence that in July 1966 the defendant gave his half-brother, John Parisi, one hundred and fifty counterfeit ten dollar bills with the understanding that the defendant would share in the proceeds. This evidence was offered on the issue of knowledge and intent.

1. 18 U.S.C. § 472. The indictment was in three counts but defendant's motion for acquittal was granted in regard to count 3 because the identifying witness had discussed with another witness certain aspects of the latter's testimony.

The principal issue at the trial centered around the Steeves identification. There was no objection to the witness Brennan's identification of the defendant. On appeal defendant complains that the spread of police photographs presented to Miss Steeves was overly suggestive of the defendant in that it implied that the guilty party was included in the spread;[2] also that this error was so great as to prejudice the jury in its consideration of the Brennan count (count I).

There is strong evidence in support of the Brennan count. Brennan's positive identification of the defendant was unimpeached. No objection was made either to his pre-trial or in-court identification which was completely independent of that made by Miss Steeves. This testimony is buttressed by that of an assistant manager of the Zayre Store located some two miles away who identified the defendant as being present in the store on the same day shortly before a counterfeit ten dollar bill was passed there. Further, there was the above mentioned testimony of Parisi on the issue of defendant's knowledge and intent. From our examination of the record there is nothing to suggest that the verdict of guilty on the Brennan count was in any way induced by the evidence presented in support of the Steeves count.

 We affirm the conviction on the Brennan count. The separate, identical, concurrent sentences imposed here do not exceed that which lawfully might be imposed under a single count.[3] Argument that the evidence would not sustain the conviction on one count is unavailing where the sentence imposed thereunder was concurrent with that imposed on another count which is valid, United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); and where, as here, there is nothing to suggest that defendant received a larger sentence than would have been imposed had there been only one count. United States v. Hines, 256 F.2d 561 (2d Cir. 1958).

 Defendant also argues that it was prejudicial error to admit in evidence the counterfeit ten dollar bill (exhibit 3) above referred to, passed the same day at Zayre's and on which count 3 of the indictment was based. We do not agree. The store clerk who received this bill gave a description of the one who passed it which conformed generally to that given by other identifying witnesses. Further, there was the assistant manager of Zayre's identification of the defendant as above stated as having been in the store shortly before this bill was discovered[4]. See United States v. Francolino, 367 F.2d 1013 (2d Cir. 1966), cert. denied, 386 U.S. 960, 87 S. Ct. 1020, 18 L.Ed.2d 110 (1967); Carrullo v. United States, 184 F.2d 743 (8th Cir. 1950).

 Next, defendant contends that the testimony of a Natick police officer that he had picked up some twenty counterfeit bills from various stores in Natick on the evening of November 21, 1966, was improperly admitted.[5] While

---

2. The witness testified "They (the agents) came in and gave me some pictures and asked me to look through the pictures and identify this person."

3. The counterfeit statute involved here (18 U.S.C. § 472) provides for a sentence of not more than fifteen years or a fine of not more than $5,000, or both.

4. He identified the defendant as one of two men that he saw in the small appliance department and also in the sporting goods department earlier in the afternoon of November 21, 1966. He stated that he observed them for about five minutes in each department. Also, it is undisputed that exhibit 3, which he collected later that evening from one of the cash registers in the store, bore the same serial number and in all other respects was similar to the two admittedly counterfeit ten dollar bills involved in counts 1 and 2.

5. Defendant also claims that he was prejudiced by testimony of this same police officer that he saw approximately thirteen

it may have been error to allow this statement, this was not a matter that loomed large at the trial and under the circumstances we do not think defendant was prejudiced thereby.

Also, defendant urges that he was prejudiced by the admission of testimony of the assistant manager of Zayre's that during the evening of November 21, 1966, he collected seven counterfeit bills from the various cash registers in the store. One of these seven was exhibit 3, supra. The record shows that the other six (exhibit 4) were finally stricken from the case and the trial court instructed the jury to disregard them. Hence we see no merit in this contention.

■ We consider briefly one last point. After Parisi testified that the defendant had given him the counterfeit bills the defense produced two rebuttal witnesses. During cross-examination these men revealed that they had met the defendant at the State Prison at Walpole. Although a motion for a mistrial was made sometime later, the defendant did not make timely objection to the question, nor was a motion made to strike the response. Accordingly, even assuming that such testimony was improper, it is much too late to raise this question now since "the burden is on the defendant to take his objection at the earliest possible opportunity when, by so doing he can enable the trial judge to take the most efficacious action." Holden v. United States, 388 F.2d 240, 242–243 (1st Cir. 1968).[6]

Affirmed.

ALDRICH, Chief Judge, and COFFIN, Circuit Judge (concurring).

While agreeing with the substance of this opinion, disposing of the appeal on the basis of Count 1 (the Brennan identification), we do not think that the case should be passed without some comment upon the circumstances of the Steeves identification introduced to support Count II. Had the latter been the only count, or were there good reasons to suppose that the evidence introduced thereunder contributed to the conviction under the first count, we might have reached a different result.

The spread of police photographs shown to Steeves contained only one photograph of a man with markedly gray hair, or wearing a parka—as defendant had been described. When this spread was shown to Steeves, a young woman, the agents simply, so she testified, "asked me to look through the pictures and identify this person." The gray hair made it easy to select the identifying photograph. The only attempt made by the prosecution to establish that Steeves relied on other factors was a conclusory question inquiring if she relied only on hair. The simple answer "No" was not followed up by any further interrogation. Steeves' in-court identification was admittedly made with the photograph she had previously identified "a little bit" in mind.

We have serious doubts whether, cumulatively, these circumstances meet the standards governing identification based on out-of-court use of photographs as set forth in Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968). We would not wish

Federal Reserve notes in the United States Attorney's office during the trial. It appears, however, that the twenty counterfeit bills above mentioned include these thirteen and therefore no separate discussion is required.

6. Defendant maintains that he did not object at the time because a direction to the jury at that time to disregard this testimony would have been inadequate. This appears to be an afterthought. The rec-

ord clearly reveals that trial counsel (there was different counsel on appeal) belatedly and reluctantly filed his motion for a mistrial only at the behest of his client. We may assume that he did not object earlier because in his judgment there was nothing to which objection would be appropriate. Furthermore, we note that prior to the filing of his motion defendant introduced an affidavit that expressly mentioned defendant's prison career at Walpole.

this opinion to be construed as encouraging the kind of selection of photographs for a spread, of preliminary comment by agents to the witness, and of inadequate attention to the necessity of establishing a recollection independent of any impermissible suggestions which tainted Steeves' testimony in this case.