**UNITED STATES of America, Appellee,**

**v.**

**Richard GRANDMONT, Appellant.**

**No. 81–1530.**

United States Court of Appeals,
First Circuit.

Argued April 8, 1982.

Decided June 16, 1982.

Jamie N. Hage, Derry, N. H., for appellant.

Robert T. Kennedy, Sp. Asst. U. S. Atty., Concord, N. H., with whom W. Stephen Thayer, III, U. S. Atty., Concord, N. H., was on brief, for appellee.

Before COFFIN, Chief Circuit Judge, FAIRCHILD, Senior Circuit Judge,[*] BREYER, Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Defendant Richard Grandmont was indicted and convicted of three crimes: conspiracy to commit bank robbery; interstate transportation of a stolen vehicle; and bank robbery. At trial, the evidence against the defendant consisted, in large part, of the testimony of an accomplice and evidence of flight. Defendant did not take the stand, but presented an alibi defense to the bank robbery count through other witnesses.

---

[*] Of the Seventh Circuit, sitting by designation.

## I. The Possible Verdicts Instruction

█ The first issue centers on an instruction to the jury concerning possible verdicts. As part of his charge, the judge told the jury:

"The possible verdicts that you may arrive at are as follows: Not guilty on all three counts, guilty on all three counts. The Clerk will ask you, . . . once you have arrived at a unanimous verdict, if you find the defendant guilty or not guilty as to each of the three individual counts."

Focusing on the first sentence, defendant argues that the court precluded the possibility of a verdict of guilty as to one or two counts, but not guilty to the others.

The first sentence, read literally, could be misleading. The proper approach on appellate review, however, is not to focus on a single sentence of a charge in isolation, but to consider the allegedly defective portion in the context of the overall instructions and with reference to the conduct of the trial. In the present case, the second sentence quoted above—and in particular its use of the words "each" and "individual"— relieved to some, extent the unfortunate phrasing of the first sentence. Similarly, the court's instruction that "there are three indictments against the defendant" and that the reasonable doubt standard must be applied "to each and every essential element of those offenses" helped to obviate any potential difficulties. The fact that defense counsel did not object to the language now complained of may indicate his view that the wording used was unlikely to cause misunderstanding. It may also reflect his feeling that the case was very likely to have a guilty verdict on all three counts unless the jury disbelieved the accomplice witness. Indeed the evidence leaves this a probability.

Considering all the circumstances, we conclude that the phrasing of the instruction was not plain error. *See* Fed.R.Crim.P. 30 and 52(b).

## II. Evidence of Flight

Defendant argues that the district court erroneously admitted evidence of flight and improperly instructed the jury that such conduct could be considered as some evidence of guilt. We find these claims to be without merit.

█ It is well established that flight and efforts at concealment or falsification of identity may be admitted at trial as bearing upon the guilt of the accused, so long as there is an adequate factual predicate. *See, e.g., United States v. Ritch*, 583 F.2d 1179, 1181 (1st Cir. 1978).

█ The offense occurred between March 28 and April 6, 1979. On October 23, 1979, defendant was served with a grand jury subpoena and told he was considered a suspect and would be questioned about the bank robbery. He told Mr. Fleury, his accomplice,[1] he was not going to appear and would depart after receiving new identification. He went to Canada. Although he returned to New Hampshire, he avoided his home and went to North Carolina in November. He went to California and was arrested there in March 1981. He had been indicted August 12, 1980.

He made efforts to change his appearance before arrest, tried to hide at the time of arrest, and claimed to be his brother instead of himself. An FBI agent testified that between the day after Grandmont was to appear before the grand jury and the time of the arrest, he was unable to locate Grandmont at his New Hampshire home or at places in the area he had been known to frequent.

We conclude that the court did not err in admitting this evidence and in instructing the jury that flight or concealment after accusation of a crime may be considered in determining guilt or innocence. The instruction did not require that the flight have occurred immediately after the of-

---

1. Mr. Fleury did not participate in the actual bank robbery, but played an active role in both the conspiracy (planning to rob a different bank) and in the interstate transportation of a stolen vehicle.

fense, but here the apparent triggering event was the subpoena. The instruction omitted suggesting there may be reasons for flight other than guilt. Defense counsel did not object to the flight instruction, but only requested that the court clarify its charge by pointing out that at the time of the alleged flight Grandmont had not been indicted on any of the three crimes in question. The court granted that request, but additionally told the jury, at the urging of the Government, that at the time he purportedly left, Grandmont had been charged with contempt for failing to appear and a bench warrant had been issued for him. We find no reversible error.

Attached to defendant's brief is a copy of a capias for defendant issued by a New Hampshire Commissioner November 13, 1979 on a drug charge indictment issued September 2, 1978. Defendant now suggests that his flight may have been related to the capias rather than consciousness of guilt of the instant charges. Whatever argument might have been predicated on the imminence of arrest on the state charge, outstanding since 1978, defendant did not choose to introduce this matter at trial. The Government's motion to strike the capias and argument thereon is well founded and is granted.

### III. Impeachment by Prior Crimes

■ The district court ruled prior to trial that if the defendant took the stand he could be impeached by three 1972 robbery convictions, which the Government characterized as "purse snatchings," but not by three 1972 burglary convictions. In light of this ruling, the defendant elected not to testify.

The applicable standard governing impeachment by prior convictions is set forth in Federal Rule of Evidence 609(a), which provides:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admit-

ted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

The trial judge did not expressly state which portion of the Rule he thought applicable in ruling the robbery convictions admissible. Defendant argues that if the judge intended to rely on subsection (1), he erred by failing to balance on the record the probative value of the convictions against their potential prejudicial impact on the defendant.[2] Alternatively, defendant maintains that if the judge was relying on subsection (2), he erred because robbery is not a crime of dishonesty or false statement.

We note at the outset that the Government argues that defendant waived objection to this ruling. That argument is premised on a statement which we find equivocal when considered in context.

Initially, the Government had submitted a memorandum arguing that the robbery and burglary convictions would be admissible under either subsection. There were evidently colloquies in which the question was argued and the court ruled, all off the record.

Just before the trial, apparently for the purpose of making a record, Government counsel described the convictions he would propose to use if the defendant took the stand. The court said:

"Okay, the Court has ruled without the record, but would rule on the record if he takes the stand, the evidence of the robberies would be permitted to be introduced for impeachment purposes, but not the burglaries, and both the State and the Defendant would take exception to the Court's ruling to preserve your rights."

**2.** It is undisputed that each of the robberies was punishable by imprisonment in excess of one year.

Later the matter came up again and the court said:

"And speaking from memory, there were three minor robberies that the Court would allow in and nothing else. There were some breaking and enterings I would not allow. It would be limited to that."

Defense counsel responded:

"I have no objection to that. I will make that decision."

[Presumably, the decision whether to put the defendant on the stand.]

The remark indicating absence of objection may have indicated no more than approval of the court's statement of its earlier ruling rather than its substance. In view of the court's earlier language concerning an exception which itself may have reflected firmness in the defense position in the off the record discussion, the later remark seems equivocal as a waiver of the right earlier expressly preserved.

Declining to treat the later remark as such waiver, we decide the point.

Turning to the merits, the Government vigorously argues, as it did in the district court, that the robbery convictions were automatically admissible as crimes of dishonesty under 609(a)(2) or, alternatively, admissible on the basis of balancing under 609(a)(1). We agree with defendant that robbery *per se* is not a crime of dishonesty within the meaning of 609(a)(2). We think persuasive the reasoning of Judge Carl McGowan in *United States v. Smith*, 551 F.2d 348, 361–365 (D.C.Cir.1976). There, after reviewing at length the history of Rule 609 and the decisions of other courts, the D.C. Circuit held that attempted robbery was not a crime of "dishonesty or false statement." In reaching its conclusion the court noted the clear expression of intent found in the Congressional Conference Committee Report, which stated:

"By the phrase 'dishonesty and false statement' the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully."

H.R.Conf.Rep.No.93–1597, 93d Cong., 2d Sess. 9, *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7098, 7103. After tracing in detail the history of the term *crimen falsi*, the court concluded that even in its broadest sense the term has "encompassed only those crimes characterized by an element of deceit or deliberate interference with a court's ascertainment of truth," 551 F.2d at 363, and that robbery is not necessarily such an offense. The court did observe that while a particular crime may not qualify as a crime of dishonesty or false statement *per se*, it may be committed by fraudulent or deceitful means such as to bring it within the legitimate ambit of Rule 609(a)(2). In such a case, the court opined, the offense should not be admissible for impeachment purposes, unless the prosecution has first demonstrated to the court the underlying facts which warrant the dishonesty or false statement description. 551 F.2d at 364 n.28. *See also United States v. Cathey*, 591 F.2d 268, 276 n.16 (5th Cir. 1979), and cases cited therein.

In the present case, there are no facts suggesting that the prior robberies—which in fact were purse snatchings—were perpetrated by deceitful or fraudulent means. In the absence of such a showing we hold the robberies were not admissible under 609(a)(2) to impeach the defendant if he took the stand.[3]

**3.** Our holding is not inconsistent with *United States v. Brown*, 603 F.2d 1022, 1029 (1st Cir. 1979), which in dicta quoted Judge (now Chief Justice) Burger's opinion in *Gordon v. United States*, 383 F.2d 936, 940 (D.C.Cir.1967), to the effect that "stealing . . . [is] universally regarded as conduct which reflects adversely on a man's honesty." The quoted statement merely recognizes that theft offenses have some probative value for testing whether a person is likely to be telling the truth; were that not the case they could not be admitted under 609(a)(1). The statement was never intended as an interpretation of what Congress meant by Rule 609(a)(2), which in fact was not adopted until long after *Gordon* was decided. *See*

We think, however, there is an ample basis to conclude that the district court's ruling was a proper exercise of discretion under Rule 609(a)(1).

The Government's memorandum of May 26, 1981, in support of admissibility discussed in detail the requirements of Rule 609(a)(1), the factors bearing upon the balancing process,[4] and how those considerations applied to the instant case. Thus, we cannot assume that the district court was unaware of the governing legal standard. Because the judge said he would admit the "three minor robberies" but not the burglary convictions, it seems likely that the judge was exercising discretion and attempting to avoid excessive prejudice to the defendant, rather than ruling that robbery, as a theft offense, is automatically admissible. Defendant's primary claim is that the judge did not detail his balancing of interests on the record. The answer to this contention—and one which we find persuasive—is that Rule 609(a)(1) does not by its terms require on the record balancing, that no First Circuit case has yet imposed such a duty, and that apparently no one requested the judge to state his reasons more fully at the time he placed the ruling on the record following the off the record conference in chambers. On the present facts, we cannot say that the trial judge acted incorrectly. We assume that he exercised discretion and do not find abuse.

## IV.   The Search Warrant Issue

■  Defendant argues that certain bogus identification documents found in his suitcase and admitted at trial as evidence of an attempt to conceal identity should have been suppressed because the search warrant which led to their seizure was based on a factually insufficient affidavit. The major obstacle to this claim is that Fed.R.Crim.P. 12(b)(3) provides that a motion to suppress *must* be raised prior to trial, and here trial counsel failed to take such action. Defendant contends, however, that this failure to timely object should be excused under the relief for "cause" provision of Fed.R. Crim.P. 12(f) since the Government did not furnish trial counsel with a copy of the affidavit prior to trial. We cannot agree.

The record indicates that defense counsel was given a copy of the search warrant and a list of the items seized nearly a month and a half before trial; that counsel had reason to believe the prosecution intended to introduce the seized items into evidence;

Smith, *supra*, 551 F.2d at 364–365 (discussing *Gordon*).

Nor is *United States v. Kiendra*, 663 F.2d 349 (1st Cir. 1981), to the contrary. The district court in that case, relying on Rule 609(a)(2), had permitted impeachment of a defendant by prior convictions for the theft-related offenses of possession of a stolen vehicle and receiving stolen goods. This court affirmed the district court's ruling that it had no discretion as to whether to admit for impeachment an offense qualifying as a crime of "dishonesty" under 609(a)(2), but expressly observed that the issue had not been raised as to whether the convictions in question had been properly denominated as such. *Id.* at 353.

The cases cited by the Government for the proposition that theft offenses are automatically admissible for impeachment under Rule 609(a)(2) are not persuasive. Three of the cases, *United States v. Oaxaca*, 569 F.2d 518, 526–527 (9th Cir. 1978), *United States v. Wilson*, 536 F.2d 883, 885 (9th Cir. 1976), and *United States v. McMillian*, 535 F.2d 1035, 1039 (8th Cir. 1976), make no express reference to subdivision (2) and can be read as only holding that under the circumstances the theft offenses reflected adversely upon credibility—a reading which is consistent with admission under subdivision (1). Another case, *United States v. Carden*, 529 F.2d 443, 446 (5th Cir. 1976), which also did not expressly mention subdivision (2), has been interpreted by a later decision of that same circuit, *United States v. Ashley*, 569 F.2d 975, 979 (5th Cir. 1978), as only holding that the admission of a petty larceny conviction for impeachment was harmless error. And finally *United States v. Bianco*, 419 F.Supp. 507, 509 (E.D.Pa.1977), *aff'd without pub. op.* 547 F.2d 1164 (3rd Cir. 1977), is without precedential force since the district court rested its decision alternatively on balancing under subsection (1).

4. As stated in the Government's memorandum, the factors to be considered are: (1) the nature of the offense; (2) the age of the conviction and the defendant's history since the conviction; (3) the similarity between the past crime and the crime for which the defendant is on trial; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue.

and that counsel knew he could obtain the affidavit underlying the warrant. Yet at no time did the defense ever request a copy of the affidavit for the purpose of exploring whether the evidence could be suppressed. Defendant does not now argue that his trial attorney was incompetent, nor does he cite any authority for the proposition that the Government was obliged to turn over the affidavit absent a request. On these facts, we cannot say that defendant has established "cause" for relieving him from the timeliness requirements of Rule 12.

## V. Non-Disclosure of the Stevens Statement

Defendant argues that the Government violated either the requirement of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or the Jencks Act, 18 U.S.C. § 3500 *et seq.*, by failing to disclose in advance of trial a statement by Paul Stevens (an alibi witness for the defense), contained in a report of FBI Agent Samuel J. Matson. *Brady* and its progeny require pretrial disclosure of exculpatory evidence materially favorable to the accused. *See United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Under the Jencks Act, after a prosecution witness has testified on direct, the Government, upon request, is required to furnish the defense with any pre-trial statements which relate to the witness' direct examination. *See* 18 U.S.C. § 3500(b). We hold that the actions of the prosecution violated neither *Brady* nor the Jencks Act.

The relevant sequence of events is as follows. On October 23, 1979, while being served with the grand jury subpoena, the defendant told Agent Matson that on the day of the robbery he was alone cutting wood on the property near his house. In April 1980, after Grandmont had fled, Agent Matson questioned Stevens and was given a different story, namely that on the day the bank was robbed, Grandmont was with him at the Stevens property cutting wood. This statement was recorded in a report by Agent Matson. In preparation for trial, defense counsel requested all *Bra-*

*dy* or Jencks Act material in the possession of the prosecution. Following an Omnibus Hearing on April 3, 1981, the magistrate issued an order, dated April 6, 1981, which stated in part:

"The Government has prepared a discovery packet which contains:

"1. Jencks Act statements of witnesses;

". . .

"4. Jencks Act statements of witnesses taken by FBI in California following defendant's arrest on March 23, 1981.

"There is no exculpatory evidence to be given but [the Government] recognizes the continuing obligation to supply exculpatory evidence if it comes to the notice of the Government."

On April 17, 1981 the Government was served with defendant's Notice of Alibi which posited a third version of defendant's activities on the day of the robbery, claiming that he, Stevens, and others had spent the day cutting wood at Grandmont's property.

Agent Matson testified in the Government's case-in-chief. His testimony on direct related only to Grandmont's flight. On cross-examination defense counsel sought to bring out additional information concerning the Agent's talks with Stevens, and it is at that point the defense claims it first learned of the statement in the report. Defense counsel objected to any reference to the statement and moved for a mistrial or, alternatively, for the Agent's testimony to be stricken. Both motions were denied.

The Stevens statement has two different aspects which merit separate consideration. First, the statement indicated that Grandmont was not at the scene of the crime. To this extent the statement was exculpatory, but clearly nondisclosure caused no prejudice to the defense for it already knew of Stevens' willingness to testify and had in fact scheduled Stevens as an alibi witness. The second aspect of the statement is that it claimed not only that Grandmont was not at the bank, but specifically that he was with Stevens at the latter's property. In this respect, the statement was unfavora-

ble, because it contradicted the defendant's claim which he maintained as early as October 1979, that he was at his own property the day of the robbery. Since it was not exculpatory, there was no constitutional duty to disclose this aspect of the statement. Accordingly, we find no reversible error under *Brady*.

As to the Jencks Act, defendant's claim seems to be that the Government was required by the Omnibus Hearing magistrate to disclose all Jencks Act statements prior to trial. We are unable to read the relevant portions of the magistrate's order, quoted earlier, as imposing such a duty. It merely states that the Government had prepared a packet containing Jencks Act statements of witnesses. It does not say that the Government was obliged to do so or that it had done so with respect to all witnesses. Moreover, even if the order were susceptible of a different reading, the magistrate would have been acting beyond his authority. A court may not compel the disclosure of statements of Government witnesses before the conclusion of their direct testimony. 18 U.S.C. § 3500(a). Clearly there was no error in not producing the Stevens statement in advance of trial.

Additionally, we note there was no breach of the Jencks Act at trial. Assuming that the statement contained in the FBI report was subject to Jencks Act disclosure, the record indicates that it was produced upon request even without a showing, as required by the statute, that it related to Stevens' testimony on direct. *See* 18 U.S.C. § 3500(b).

### VI. Sufficiency of the Evidence

■ Defendant's remaining challenge is to the sufficiency of the evidence. We find it to be without merit.

The testimony of the accomplice, which related to the conspiracy to rob a bank and to the interstate transportation of the stolen vehicle (but not to the robbery itself), was not so incredible or inconsistent that it could not have been believed by the jury.

As to the actual robbery, the proof was circumstantial and in addition to the accom-

plice testimony concerning planning included evidence of the defendant's possession of several stacks of $10.00 and $20.00 bills in wrappers shortly after the robbery, his flight from the grand jury and attempts to conceal his identity, as well as the discrediting of his alibi. The jury could have found this evidence persuasive. Viewed most favorably to the prosecution, the proof was sufficient to establish guilt beyond a reasonable doubt as to each of the three offenses.

Accordingly, the motion to strike is granted and the judgment appealed from is affirmed.