USCA1 Opinion

 

 June 21, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ______________________ Nos. 91-1290 91-1365 91-1366 UNITED STATES, Appellee, v. LUIS E. ORTIZ-ARRIGOITIA, a/k/a COLIBRI, et al Defendants, Appellants _________________________________________________ ERRATA SHEET The opinion of this court issued on June 11, 1993, is amended as follows: On page 19, fourth line of footnote 2, replace "n.4" with "n.9." UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 91-1290 UNITED STATES, Appellee, v. LUIS E. ORTIZ-ARRIGOITIA, a/k/a COLIBRI, Defendant, Appellant. __________ No. 91-1365 UNITED STATES, Appellee, v. LUIS HIRAM ORTIZ-CAMERON, Defendant, Appellant. __________ No. 91-1366 UNITED STATES, Appellee, v. PEDRO MEDINA-VAZQUEZ, a/k/a PURUCO, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Gilberto Gierbolini, U.S. District Judge] ___________________ ____________________ Before Selya and Stahl, Circuit Judges, ______________ and Skinner,* District Judge. ______________ ____________________ Samuel I. Burstyn argued for appellants Ortiz-Cameron and Medina- _________________ Vazquez and was on brief for appellant Ortiz-Cameron. Jose R. Franco Rivera argued for appellant Ortiz-Arrigoitia and ______________________ was on joint brief for appellants Ortiz-Arrigoitia and Medina-Vazquez. Luis Rafael Rivera on joint brief for appellants Medina-Vazquez ___________________ and Ortiz-Arrigoitia. Joseph S. Uberman, Attorney, Criminal Division, U.S. Department __________________ of Justice, with whom Robert S. Mueller, III, Assistant Attorney ________________________ General, Mary Lee Warren, Chief, Criminal Division, U.S. Department of _______________ Justice, Hope P. McGowan, Attorney, Criminal Division, U.S. Department _______________ of Justice, and Daniel F. Lopez Romo, United States Attorney, were on ____________________ brief for appellee. ____________________ June 11, 1993 ____________________ ______________________ * Of the District of Massachusetts, sitting by designation. SKINNER, District Judge. These appeals are from convictions ______________ on assorted charges of conspiracy, importing and possessing large quantities of marijuana and cocaine, aiding and abetting therein and, in the case of Medina Vazquez, possession of a firearm in connection with the drug charges. These defendants were tried together with two others. This trial was part of the serial prosecution of some 55 members of a large scale drug importation and distribution organization known as "La Nena." Of their numerous assertions of error, the most serious is the denial of their motions for a mistrial after discovery by the court that four of the jurors had arrived at a conclusion concerning guilt prior to the presentation of the defendants' evidence. We reserve our discussion of this difficult issue until last. l. Sufficiency of evidence. _______________________ All defendants challenge the sufficiency of the evidence against them because the government's case depended on the testimony of Geraldo Portalatin Toledo ("Portalatin"), a leading member of the "La Nena" drug organization. Defendants argue that Portalatin's testimony was so unreliable and so sketchy as to them, that it was -3- 3 insufficient as a matter of law. Portalatin was cross- examined concerning his deals with the government. The judge gave complete and correct instructions detailing the special care the jury should take in assessing the testimony of an accomplice. Under these circumstances, an accomplice is a qualified witness and the credibility of the witness is for the jury. United States v. Restrepo-Contreras, 942 F.2d ___________________________________ 96, 99 (1st Cir. 1991) (it is the province of the jury to assess the credibility of a witness), cert. denied, 112 S. ____________ Ct. 955 (1992). Portalatin testified that Ortiz Arrigoitia and Medina Vazquez helped unload various shipments of marijuana and cocaine and Ortiz Cameron participated in the unloading and distribution of a load of cocaine at a "clandestine airfield" at La Furnia Farm in Barceloneta, Puerto Rico. Portalatin's evidence, if believed, when considered with the other evidence in the case was sufficient to support conviction by the jury, notwithstanding Portalatin's unsavory history and the contrary evidence presented by the defendants. 2. Improper admission of testimony. _______________________________ Ortiz Cameron further asserts error in the admission of evidence. Portalatin testified that the driver -4- 4 of a Chevrolet "power wagon" (apparently a four-wheel-drive truck) which was used to remove the cargo of cocaine after an incoming plane crashed at Furnia was "Hiram," whom he identified as Luis Hiram Ortiz Cameron, the defendant. Portalatin had been in the plane which crashed, had bumped his head, had pulled the pilot out of the plane and had described himself as "shaken" by the experience. Ortiz Cameron argues that Portalatin's condition made him so unreliable that his testimony should not have been allowed. There is no evidence, however, that he was in any way incapacitated. He pulled the pilot from the plane and helped salvage the cargo. He then spent two hours beside "Hiram" as the latter drove the "power wagon" to the destination of the contraband. Under such circumstances, his credibility was for the jury. During the cross-examination of Portalatin, the defense attorney discovered for the first time that Portalatin, during his debriefing by government agents, was shown a picture of Ortiz Cameron. He immediately identified the picture, saying "That's Hiram." It does not appear that any suggestive comment was made. This picture was not part of a spread, however, and it was shown to Portalatin in the -5- 5 course of the discussion of his participation in the various drug transactions. Defense counsel moved that Portalatin's testimony concerning Ortiz Cameron be stricken as unacceptably tainted. Among other reasons, he asserted that he had not been shown the photograph in question, and that the evidence packet furnished by the prosecution contained copies of photographs which were simply blotches of white on black. The prosecutor replied that all defendants had been invited to the office of the United States Attorney to view all of the government's hundreds of exhibits, but that none of them had taken advantage of the opportunity. The trial judge made no explicit finding, but apparently accepted the prosecution's explanation. He offered to suspend the trial, however, to provide defense counsel an opportunity to examine the photo and to develop any evidence of improper suggestion. Counsel declined and proceeded with the cross- examination of Portalatin. Not until eight days later, at the close of all the evidence, did counsel move for a voir ____ dire of Portalatin to explore any possible taint. This ____ untimely motion was denied. The reliability of identification testimony allegedly tainted by reason of an impermissibly suggestive -6- 6 photograph should be resolved after consideration of all the circumstances. Manson v. Brathwaite, 432 U.S. 98, 113-14 _____________________ (1977); United States v. Bouthot, 878 F.2d 1506, 1514 (1st _________________________ Cir. 1989). In this case, it would appear that Portalatin had spent over two hours in the close company of "Hiram," albeit at night and under difficult circumstances. He knew Hiram's first name before the photograph was identified. The district judge's offer to suspend the trial to permit further investigation was refused. The defendant was doubtless entitled to a voir dire examination of Portalatin _________ before proceeding with the cross-examination, but certainly not eight days later. There was no error in the denial of his untimely motion. Similarly, we find no error in the trial judge's decision to permit Portalatin's identification to stand. Ortiz Cameron also alleges error in the admission of testimony concerning his disappearance from his normal whereabouts immediately after the "La Furnia" episode and concerning his wealth, which the government asserted could only be explained by his participation in illicit drug deals over a period of time. The defendant had ample opportunity to rebut such testimony. It is well established that unexplained flight or a defendant's attempt to conceal his -7- 7 identity may be relevant evidence of guilt. See, e.g., __________ United States v. Grandmont, 680 F.2d 867, 869 (1st Cir. ____________________________ 1982). Similarly, evidence of the acquisition of otherwise unexplained wealth may corroborate other evidence of participation in lucrative crimes. United States v. Ariza- _______________________ Ibarra, 605 F.2d 1216, 1224-25 (1st Cir. 1979), cert. ______ _____ denied, 454 U.S. 895 (1981). _______ 3. Severance. _________ All three defendants moved before trial for a severance on the ground that there would be prejudicial "spill-over" of evidence from one to the other. Such a motion is addressed to the sound discretion of the trial judge. United States v. Natanel, 938 F.2d 302, 308 (1st __________________________ Cir. 1991), cert. denied, 112 S. Ct. 986 (1992); United _____________ ______ States v. Boylan, 898 F.2d 230, 246 (1st Cir.), cert. _________________ _____ denied, 111 S. Ct. 139 (1990). Where defendants are ______ indicted in a common conspiracy, there necessarily will be evidence relevant to the charges against more than one defendant, and properly so, since co-conspirators are liable for all of the criminal acts carried out in furtherance of the conspiracy. United States v. Figueroa, 976 F.2d 1446, _________________________ 1452 (1st Cir. 1992). The district judge properly exercised -8- 8 his discretionary power in denying the motion and properly instructed the jury to consider the evidence against each defendant separately. Defendants Ortiz Arrigoitia and Medina Vazquez renewed their motion after the defendant Ortiz Cameron called Rafael Tormes, a convicted member of the same drug conspiracy, as a witness. On the stand, Tormes testified that Ortiz Cameron had nothing to do with the La Furnia unloading. He did not in any way incriminate Ortiz Arrigoitia or Medina Vazquez. No inconsistent defense was presented. All that occurred was that on cross-examination Tormes corroborated some of the details of Portalatin's testimony. The prejudice claimed by Ortiz Arrigoitia and Medina Vazquez is that by so doing Tormes bolstered the credibility of Portalatin to their detriment. The defendants have offered no authority in support of the dubious proposition that this entitles them to a mistrial, and we have found none. See United States v. Angiulo, 897 ___ ________________________ F.2d 1169, 1194-95 (1st Cir. 1990) (finding withdrawal/noninvolvement defense insufficiently antagonistic to require severance); United States v. Luciano ________________________ Pacheco, 794 F.2d 7, 8-10 (1st Cir. 1986) (explaining that _______ the degree of antagonism must go beyond mere finger pointing -9- 9 into the realm of fundamental disagreement over core and basic facts); United States v. Talavera, 668 F.2d 625, 630 __________________________ (1st Cir.) (concluding that antagonistic defenses do not per se require severance, even if the defendants are hostile or attempt to cast blame on each other), cert. denied, 456 U.S. ____________ 978 (1982). The district judge properly denied the defendants' motions for severance and a mistrial. 4. Improper Argument. _________________ In the course of his closing argument, the prosecutor said with reference to the defense attorneys, "they want like to scramble your heads, confuse you." After an objection was overruled, the prosecutor repeated "They wanted to confuse your head." Later the prosecutor said, "Do not let the attorneys here intimidate you, ladies and gentlemen -- ."1 Defense counsel objected. The judge responded by addressing the jury: "I don't believe that the attorneys for the defendants are intimidating the jurors so --." In this particular instance we are not persuaded that these comments were so prejudicial as to require ____________________ 1This quotation and the following one were unfinished sentences according the transcript and are not ellipses created by the author of this opinion. -10- 10 reversal. We do not understand, however, why, after numerous warnings from this court, the prosecuting attorneys in the District of Puerto Rico persist in spiking their arguments with comments that put their cases at risk. See, ____ e.g., United States v. Nickens, 955 F.2d 112, 120 (1st Cir. _____ ________________________ 1992); United States v. Soto-Alvarez, 958 F.2d 473, 477-78 ______________________________ (1st Cir. 1992); United States v. de Leon Davis, 914 F.2d ________________________________ 340, 344-45 (1st Cir. 1990). -11- 11 5. Sentencing errors. _________________ Medina Vazquez argues that the district judge erroneously refused to reduce his offense level by four because of his minimal participation. U.S.S.G. 3B1.2. The comment (n. 2) to the cited section suggests that this reduction should be used sparingly, e.g., in a case where the defendant was engaged in a single off-loading. In this case there was credible evidence that Medina Vazquez had been involved in a number of off-loadings. In the absence of any transcript of the sentencing hearings in either the record or the supplementary record, we shall assume that the district judge made appropriate findings of fact. See, ____ e.g., Valedon Martinez v. Hospital Presbiteriano, 806 F.2d _____ ___________________________________________ 1128, 1135 (1st Cir. 1986) ("We have held repeatedly that we will not review a claim of error if the appellant has failed to include a transcript of the pertinent proceedings in the record on appeal."). Ortiz Cameron argues that the district judge failed to make sufficiently detailed findings of fact in resolving factual disputes raised by objections to the presentence investigation report ("psi"). In fact, those objections to the psi present in our record on appeal raised no substantial factual issues, except that of guilt, which -12- 12 had already been resolved by the jury. The district judge's findings were more than adequate under the circumstances. 6. Ineffective assistance of counsel. _________________________________ Ortiz Cameron alleges ineffective assistance of trial counsel. We have repeatedly held that, absent exceptional circumstances, this claim is not open on direct appeal unless it has been previously raised before the district judge, who is in the best position to make an initial judgment. See, e.g., United States v. Gray, 958 __________ ______________________ F.2d 9, 15 (1st Cir. 1992). This issue was not presented to the district judge, who in fact praised trial counsel for his diligence at one point in the trial. 7. Recusal. _______ After the trial in this case the trial judge recused himself from the trial of Sonia Berrios Rodriguez, "La Nena," the purported head of the drug ring, on the grounds of his familiarity with the facts of the case because of previous related trials, of which this was one. Ortiz Cameron claims that this shows that the judge was prejudiced and should have recused himself earlier. In fact the judge was under no obligation to recuse himself from the -13- 13 trial of "La Nena," but did so as a matter of discretion. In re Allied-Signal Inc., 891 F.2d 967, 970 (1st Cir. 1989). ________________________ Defendant's argument is frivolous. 8. Motion for Mistrial Resulting from Jury Misconduct. __________________________________________________ The major controversy in this case swirls around events stemming from allegations of juror misconduct. There are two issues that arise in this context. First, we must decide whether the district court's finding regarding juror impartiality was clearly erroneous. Second, we must decide whether a remark made by the district court while investigating the question of juror impartiality improperly shifted the burden of proof. While these two questions are factually intertwined in this case, they are analytically distinct, and we therefore consider them seriatim. ________ A. Background. ___________ At the close of the government's case, the judge was advised that the daughter of a juror, who had been daily accompanying her mother to the court, had been observed in prolonged conversation with a young woman identified as the girl friend of the defendant Ortiz Cameron. The district judge then interviewed the daughter and her mother, the -14- 14 juror. It appeared from these interviews that the juror had discussed the case at length with her daughter, and had expressed very definite views about the testimony of the government's witnesses. The daughter also reported her understanding from talking with her mother that the jurors had discussed the case among themselves. The juror was then segregated from the other jurors and later excused. The judge then summoned all of the jurors into chambers, one by one, and asked them the following series of questions: l. At this point, have you discussed with the jurors or anyone else the guilt or innocence of the defendants? 2. Have you discussed with the other jurors or with anyone the reputation of the defendants? 3. Have you discussed with the other jurors or with anyone else the credibility of any of the witnesses? 4. At this point, have you reached a decision regarding the guilt or innocence of the defendants? All of the jurors except one answered the first three questions in the negative. One juror said that he thought he had heard some comment about the case but could not remember what it was about. Four jurors, however, answered the fourth question in the affirmative, indicating that they had reached a decision concerning the guilt or innocence of -15- 15 the defendants. The judge then recalled these four jurors, again one at a time, and addressed each one as follows: As I instructed you before, the guilt or innocence of the defendants is decided after listening to all the evidence, to the final summations of the attorneys and after applying the instructions as to the law to be given by me. And my question is, would you be able to keep an open mind and in the course of your deliberations with your fellow jurors, re-examine your own views and change your opinion if convinced it is erroneous? All four of the jurors answered emphatically in the affirmative. The district judge then declared that he was satisfied that the jurors would carry out their duty properly, based on their answers and his observation of their demeanor. Counsel for Ortiz Cameron and counsel for Medina Vazquez (and counsel for another defendant whose appeal is not before us) moved for a mistrial. Counsel for Ortiz Arrigoitia expressly declined to so move at that time and joined in the motion only at the very end of the case, just before closing arguments. In response to the judge's comment, counsel for Ortiz Arrigoitia admitted that he had initially refrained from joining the motion for the purpose of claiming double jeopardy if the motion had been granted -16- 16 without his consent. It is our view that a motion for a mistrial should be made promptly. This was no case of mistake or inadvertence, but one of deliberate delay for tactical purposes. Failure to make a timely motion for mistrial under these circumstances constitutes a waiver and precludes consideration of this issue on appeal with respect to Ortiz Arrigoitia. Cf. United States v. DiPietro, 936 ___ __________________________ F.2d 6, 9-10 (1st Cir. 1991) (inferring waiver of a defendant's constitutional protection against double jeopardy from silence where the defendant had the opportunity to object but failed to do so until one day later); Grimaldi v. United States, 606 F.2d 332, 339 (1st __________________________ Cir.) (explaining that where defendant had the opportunity to renew a motion for mistrial for prosecutorial misconduct, but declined to do so, the claim was not preserved for appeal), cert. denied, 444 U.S. 971 (1979); Saville v. ______________ ___________ United States, 400 F.2d 397, 400 (1st Cir. 1968) (concluding _____________ that motion for mistrial was untimely where defendant failed to act at the earliest possible opportunity), cert. denied, ____________ 395 U.S. 980 (1969). B. District Court's Finding. _________________________ -17- 17 When a non-frivolous suggestion is made that a jury may be biased or tainted by some incident, the district court must undertake an adequate inquiry to determine whether the alleged incident occurred and if so, whether it was prejudicial. See, e.g., Boylan, 898 F.2d at 258; United __________ ______ ______ States v. Anello, 765 F.2d 253, 259 (1st Cir.), cert. _________________ _____ denied, 474 U.S. 996 (1985); United States v. Corbin, 590 _______ _________________________ F.2d 398, 400 (1st Cir. 1979). The trial judge is not, however, shackled to a rigid and unyielding set rules and procedures that compel any particular form or scope of inquiry. Rather, in light of the infinite variety of situations in which juror misconduct might be discerned and the need to protect jurors and the jury process from undue imposition, the trial judge is vested with the discretion to fashion an appropriate and responsible procedure to determine whether misconduct actually occurred and whether it was prejudicial. Boylan, 898 F.2d at 258. As we have ______ often explained, "A district court has broad, though not unlimited, discretion to determine the extent and nature of its inquiry into allegations of juror bias." Corbin, 590 ______ F.2d at 400. In this case, upon discovering that a juror may have spoken about the trial to her eighteen year-old -18- 18 daughter, the district court immediately summoned the juror and the daughter to chambers for separate interviews in the presence of all counsel. The juror confirmed that she had spoken to her daughter about the defendants, but denied that she had talked to the other jurors about the case. The district court promptly segregated the juror and announced his intention to interview individually all jurors to determine if any others had been tainted. The following morning all jurors denied speaking about the case to outsiders or each other, though one thought he had heard some comment among the jurors about the case without identifying what those comments concerned. Counsel were present but were not permitted to participate directly in the interviews; however, the questions posed by the judge to the jurors reflected concerns previously expressed by counsel. Counsel has no right to pose specific questions to a juror or to pursue every desired avenue of inquiry. The control and direction of a court's investigation into juror misconduct is within the discretion of the district court, not defense counsel. Corbin, 590 F.2d at 400. ______ After interviewing all the jurors and relevant third parties, consulting with counsel, and weighing the testimony, demeanor, and credibility of the various parties, -19- 19 the court found the jurors were not partial. The trial court conducted an adequate investigation into the alleged misconduct and reached a reasonable conclusion about the jurors' impartiality. Ortiz Cameron and Medina Vazquez present no compelling evidence to the contrary and we find nothing in the record that leads us to believe that the district court's investigation was inadequate or his findings clearly erroneous.2 C. Remark By Judge. ________________ It is also suggested that the district court shifted the burden of proof when it asked the four jurors: "would you be able to keep an open mind and in the course of your deliberations with your fellow jurors, reexamine your own views and change your opinion if convinced it is erroneous?" Although recognizing that the judge's remark is ____________________ 2Our dissenting colleague suggests an "alternative ground for reversal" -- the district court's failure to inquire into Juror Carrero-Roman's statement that members of the jury had discussed the case. See Stahl, n.9. The ___ defendants, however, have not specifically argued this issue on appeal. In any event, we do not consider the alternative ground to be meritorious. Juror Carrero-Roman's answer was extremely indefinite and, on the facts of this case, did not require a full-fledged judicial inquiry. Moreover, the judge essentially conducted a full-fledged inquiry when he asked the other jurors questions which would have revealed precisely the impropriety which Judge Stahl fears. -20- 20 less than a textbook model, we do not view the language employed, in the specific context of this case, as suggesting that the defendants bore the burden of proving their innocence. First, the judge's remark was not an instruction at all but a question asked mid-trial in the context of an investigation we have otherwise held to be sufficient. See ___ supra Part A. Second, the question -- even if somehow _____ deemed to be an instruction -- did not place the burden of proof on any specific party but merely asked whether the jurors retained the ability to reexamine their views in light of further developments. Indeed, the judge scrupulously avoided indicating what particular views he thought the jurors possessed and instead referred only the jurors' ability to change their "opinion," whatever it might be. Third, again assuming that the question were to be deemed an instruction, the defendants did not give the district court an opportunity to cure it by, at any stage, proposing a sound alternative instruction. And, finally, assuming the question were an instruction, it must be viewed in the context of the entire jury charge. See Boylan, 898 F.2d at 244; see also Cupp v. __________ _________________ Naughten, 414 U.S. 141, 146-47 (1973) ("a single instruction ________ -21- 21 to a jury may not be judged in artificial isolation"). Here, in his pre-deliberations charge, the judge at least ten times explicitly and directly instructed the jury that the government bore the burden of proof.3 Moreover, the judge himself placed his previous questioning of the jury in context when he stated: Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts. Any slight ambiguity created by the mid-trial reference to an "open mind," then, is adequately dispelled once the ____________________ 3To provide just two examples, the judge stated: Indeed the defendants are presumed by law to be innocent. The law does not require the defendant to prove his innocence or produce any evidence at all and no inference whatsoever may be drawn from the election of a defendant not to testify. The government, that is the prosecution[,] has the burden of providing or proving the[ defendants] guilty beyond a reasonable doubt and if he fails to do so, you must acquit them. Later, the judge repeated that "it is up to the government to prove the[ defendants] guilty beyond a reasonable doubt." Elsewhere in the charge the judge continually instructed the jury that the government bore the burden of proof beyond a reasonable doubt with regard to each element of each offense. -22- 22 "instruction" is viewed in the context of these other, ample instructions.4 We find further support for our conclusion in a fifth factor -- circuit precedent. See United States v. _____________________ Nickens, 955 F.2d 112, 118-19 (1st Cir. 1992). In Nickens _______ _______ the district judge, in his opening charge to the jury and in ___ remarks made to the jury after closing arguments, actually issued an "open mind" instruction very similar to the mid- ___________ trial question asked here. In finding that the instruction was not plain error, we held that it "merely told the jury not to evaluate the evidence it would be hearing until the evidence was all in and the court had rendered its instructions." Id. at 118. We further noted that: ___ Telling a jury to postpone making a final judgment until all the evidence has been presented, does not instruct the jury as to the weight or effect that should be given to any aspect of that evidence -- nor to the presumption of innocence -- when making their final judgment. Id. at 119. Given this precedent, and given the four case- ___ specific factors we have identified, we find that the ____________________ 4We note, however, that this entire situation could easily have been avoided had the judge instructed the jurors, at the time this issue arose, that the burden of proving the defendants' guilt always rests with the government. -23- 23 remarks made by the district judge did not impermissibly shift the burden of proof.5 Affirmed. _________ ____________________ 5The judge below also made a mid-trial "open mind" statement which is more easily construed as an "instruction." As the dissent acknowledges, however, no one challenged this statement at any stage. If we were to review it, then, it would be under a plain error rubric and Nickens would _______ directly control. -24- 24 STAHL, Circuit Judge, (Dissenting). With respect, STAHL, Circuit Judge, (Dissenting). _____________ I dissent from the majority opinion because I believe that the district court's response to the juror misconduct allegations in this case obliges us to grant defendants a new trial. With regard to this issue, the majority rests its affirmance on the well-established rule that district courts have discretion "to fashion an appropriate and responsible procedure to determine whether [juror] misconduct actually occurred and whether it was prejudicial." Ante, at 15 ____ (citing Boylan, 898 F.2d at 258). While I agree that a ______ district court has broad discretion to determine the nature ______ of its inquiry into allegations of juror misconduct, I do not think that that discretion is so broad as to permit a court to commit errors of constitutional dimension while performing that inquiry. Here, the district court, in its effort to assess whether juror misconduct had occurred, selected a method of inquiry which had the effect, in my opinion, of shifting the burden of proof from the government to the defendants. Moreover, the court's failure properly to instruct the jurors of the government's burden of proof compounded the error. As a result, I am of the opinion that the motions for mistrial should have been granted. For these reasons, I would reverse. -25- 25 This case, in my view, cannot properly be resolved without a detailed summary of the events surrounding the court's response to the juror misconduct allegations. I begin therefore with a recitation of these facts. When the question of possible juror misconduct arose, the district judge immediately and correctly commenced an interrogation of a young woman, the daughter of Juror Gonzales, who had been seen conversing with a defendant's girlfriend. During the inquiry, it became apparent to the court that the daughter and the defendant's girlfriend had discussed that defendant's innocence. It also became clear that the daughter had discussed many aspects of the case with her mother, Juror Gonzales. As a result, the court then interrogated Ms. Gonzales. Juror Gonzales admitted that she had engaged in discussions with her daughter about the case. She denied, however, having expressed any opinion as to the guilt or innocence of the defendants, and generally downplayed the extent and content of the discussions. She also stated that no juror had indicated an opinion as to the guilt or innocence of the defendants. At the conclusion of Juror Gonzales's interrogation, counsel for defendant Diaz Fernandez and counsel for defendant Ortiz Cameron moved for a mistrial. In response, the court first indicated that it did not intend to -26- 26 question any of the other jurors. The AUSA requested, however, that the court reconsider that decision. The court then indicated that it would take no action on the mistrial motions that evening but would decide what to do the following morning. Ortiz Cameron's attorney then, for unexplained reasons, retracted his motion for mistrial. The following morning, the court commenced interrogations of each of the remaining twelve jurors, beginning with the jury foreman. Counsel took no part in the formulation of the following four questions: (1) At this point have you discussed with the other jurors or with anyone else the guilt or innocence of the defendants? (2) Have you discussed with the other jurors or with anyone the reputation of the defendants? (3) Have you discussed with the other jurors or with anyone else the credibility of the defendants? (4) At (4) At this point have you reached a decision this point have you reached a decision regarding the guilt or innocence of the regarding the guilt or innocence of the defendants? defendants? The foreman and eight of the other jurors answered "no" to all four questions. One of those jurors, Mr. Luis Carrero Roman, however, answered question three with the statement: "Well, I can say it is hard for me to say yes or no because yes, we made comments between us but nothing that I can say yes or no." Four other jurors (hereinafter referred to collectively as "the four jurors") while answering "no" to the first three questions, answered "yes" to the critical fourth question. -27- 27 At this juncture, the Court individually recalled the four jurors. The court then asked the four jurors one question, a question which, in my opinion, was seriously leading. Before asking the question, the court made the following statement: As I instructed you before, the guilt or innocence of the defendants is decided after listening to all the evidence, to the final summations of the attorneys and after applying the instructions as to the law to be given by me. The court followed this statement with: And my question is, would you be able to keep an open mind and in the course of your deliberations with your fellow jurors, re-examine your own views and change your opinion if convinced it is erroneous? Each of the four jurors answered this question in the affirmative. Juror Luis Carrero Roman, who admitted to having engaged in discussions with other jurors, was not recalled. At no time did the court allow counsel to speak or to propose follow-up questions. Indeed, throughout the __________ inquiry, the court refused to allow defense counsel to utter so much as a word. After the inquiry ended, however, the court entertained objections. Counsel for Diaz Fernandez objected both to the length of the court's interrogations and the leading nature of the revised question. He also pointed out that some jurors had stated that they either had discussions -28- 28 with one another or had already made up their minds. Counsel then renewed his motion for a mistrial, stressing his belief that no instruction could cure the problem. Counsel for __ defendant Ortiz Cameron then joined the motion for mistrial, arguing that the presumption of innocence had been compromised. Counsel for defendant Ortiz Arrigoitia, while objecting to the court's juror questions, nonetheless did not join the motion for mistrial. At that point, the AUSA also expressed concern with the court's inquiry: [O]ne thing concerns me, and it is a point brought up by [defense counsel] concerning the instructions that have been given by the Court to the petit jury to the effect that they should keep an open mind at all times until the end. And apparently these four jurors, at least, have not kept an open mind until the end of the proceedings. As a result of these concerns, the AUSA urged the court to enter specific findings as to the "demeanor" of the four jurors: . . . I would ask that the court make[] findings to the effect that [the four jurors] appear[ed] to be quite sincere . . . . The bottom line is, Your Honor, this is a due process issue, whether these defendants are being afforded due process by these jurors, and to that effect, I believe the Court would have to enter a finding that yes, they can, they are willing and able to keep an open mind and to reach a decision at the end of the case based upon the evidence and the instructions given by the court. I would think it is a close shot, but I think -29- 29 there is sufficient information received by the Court through the questioning to make a decision. Immediately thereafter, the court entered the following statement for the record: All right. This is a matter of deciding whether these jurors, especially the four jurors that we have questioned, are sincere and will be willing to give these defendants all due process. And I believe[,] and I so find[,] that these jurors are sincere and in the same way they expressed an opinion that they have reached a decision as of now, they also sincerely are able to keep an open mind and re-examine their own views . . . . I was impressed by the sincerity of the answers and the expressions in the face of each juror when I asked the second part of the last question . . . . The court then denied the pending motions for mistrial. Subsequently, counsel for defendant Pedro Rivera joined the motions for mistrial. The court then decided to excuse Juror Gonzales, whose discussions with her daughter had inspired the entire inquiry, a decision approved by all counsel. When the jury reconvened, the court instructed it as follows: So, I again repeat my instructions to you, not to form or express an opinion regarding the guilt or innocence of the defendant, to keep an open mind. Don't discuss the case among yourselves or with anyone else. Keep an open mind. No one objected to this instruction. The court's final instructions to the jury contained the following: -30- 30 The indictment or formal charge against the defendant is not evidence of guilt. Indeed the defendants are presumed by law to be innocent. The law does not require the defendant to prove his innocence or produce any evidence at all and no inference whatsoever may be drawn from the election of the defendant not to testify. Under the law a defendant may or may not testify as he elects since it is up to the government to prove them guilty beyond a reasonable doubt as I said before. The law does not require the defendant to take the witness stand and testify and no presumption of guilt may be raised and no inference of any kind may be drawn from defendant's failure to testify. In addition, the court gave several other "reasonable doubt" instructions in connection with various aspects of the case. At no time, however, did it unequivocally instruct that the burden of proof was always on _____________ the government.6 ____________________ 6. In its initial charge to the jury, the court instructed on the government's burden as follows: The indictment or formal charge against the defendant is not evidence of guilt. Indeed the defendants are presumed by law to be innocent. The law does not require the defendant to prove his innocence or produce any evidence at all and no inference whatsoever may be drawn from the election of a defendant not to testify. The government, that is the prosecution has the burden of providing or proving them guilty beyond a reasonable doubt and if he (sic) fails to do so, you must acquit them. Thus, while the government's -31- 31 The majority concludes that the district court reached a reasonable conclusion about the impartiality of the jurors and that defendants Ortiz Cameron and Medina Vazquez: present no compelling evidence to the contrary and we find nothing in the record that leads us to believe that the district court's investigation was inadequate or his findings clearly erroneous. Ante, at 16. Respectfully, my review of that same record ____ leads me to the opposite conclusion. When faced with four jurors who admitted that they had formed an opinion about the guilt or innocence of the defendants, the district court brought these four jurors into chambers again and, in my view, structured the "open mind" question in such a way that "yes" was the only acceptable ____ response. Before asking the question, the court effectively admonished the four jurors, reminding them of its instruction at the beginning of the trial to determine guilt or innocence only after hearing all of the evidence. One does not need a degree in psychology to understand the effect that this statement had on the four jurors' ability to answer this critical "question" in a calm and uninhibited manner. At pages 17-19 of the majority opinion, my brethren offer five reasons why this question did not, in their ____________________ burden of proof is a strict or heavy burden, it is not necessary that the defendant's guilt be proved beyond all doubt. -32- 32 estimation, shift the burden of proof. I do not think that any one of these five points sufficiently answers the problem. With the first four points, I am afraid that my colleagues have ceded analysis to semantics, and have exalted form over substance. I cannot join in such an approach, particularly where, as here, the fundamental right to a fair trial is at stake. As to the majority's fifth point - i.e., its ____ reliance upon Nickens, 955 F.2d at 118-19, for the _______ proposition that the judge's "open mind" instruction cured any such shifting of the burden of proof - I am baffled. In Nickens, we upheld almost identical "open mind" instructions _______ only after acknowledging that they were problematic. See id. ___ ___ at 118 (affirming instructions "[w]ithout endorsing their form"). We were analyzing those instructions to determine whether they alone had the effect of negating the presumption _____ of innocence. We reasoned that those instructions "would [not] normally suggest to the jury that the government's ________ burden of proving guilt is equal to defendant's burden of proving innocence." Id. (emphasis supplied). Finding ___ nothing extraordinary in that case, we concluded that the instructions were not "so egregious as to constitute plain error." Id. ___ Here, however, we are not reviewing this "open mind" instruction to determine whether it alone had the -33- 33 effect of negating the presumption of innocence. Rather, we must determine whether this otherwise problematic instruction cured the multi-layered burden of proof problems presented by _____ this case. I think it obvious that this instruction cannot and should not be viewed as curative.7 As such, my colleagues' reference to Nickens as controlling "circuit _______ precedent" is entirely unpersuasive. In sum, it is my strong opinion that when he reconvened the jury, the trial judge had an obligation to cure any potential misperceptions his colloquy may have left ___ in the minds of the four jurors on the fundamental question of who bears the burden of proof. Waiting until the very end of a lengthy trial to instruct the jury properly on this question does not alleviate the prejudice.8 Under any any ___ standard of review, I think these convictions should be reversed and that defendants should be granted a new and fair ____________________ 7. Moreover, I do not think that the court's error should escape review merely because it entered into the record specific findings about the "demeanor" and visible "sincerity" of each of the juror's answers to the question. 8. To bolster its affirmance, the majority refers to the numerous occasions on which the district court, before the juror misconduct allegations surfaced, instructed the jury on the burden of proof. Those instructions are, however, utterly irrelevant in determining whether the district court, later in the trial, made statements or gave instructions that may have negated the presumption of innocence. -34- 34 trial.9 Any other result denies these defendants a "`basic protection'" afforded by the Constitution, a protection which reflects "`a profound judgment about the way in which law should be enforced and justice administered.'" Sullivan v. ________ ____________________ 9. I further note that the majority opinion does not adequately address the district court's failure to inquire into Juror Luis Carrero Roman's admission that members of the jury had, in fact, conversed about the case. As we made clear in United States v. Richman, 600 F.2d 286, 295 (1st ______________ _______ Cir. 1979), a trial court should conduct the following four- part inquiry when faced with allegations that jurors may have acted improperly: [1] ascertain whether the misconduct actually occurred; [2] if it did, determine whether it was prejudicial; [3] if not clearly unprejudicial, grant a new trial; [and] [4] specify reasons if the court determines either that the misconduct did not take place or was not clearly prejudicial. Id. (citing United States v. Doe, 513 F.2d 709, 711-12 (1st ___ _____________ ___ Cir. 1975)). Here, after learning from Juror Carrero that members of the jury had discussed the case, the district court failed to inquire further and refused to allow defense counsel to interject follow-up questions. As a result, the record contains no evidence about what types of discussions __ Juror Carrero may have had with other jurors, or may have overheard. We are left to speculate. In light of all the circumstances, I consider this error an alternative grounds for reversal. Furthermore, I cannot agree with the majority's cavalier conclusion that "the judge essentially conducted a full- fledged inquiry when he asked the other jurors questions which would have revealed precisely the impropriety which Judge Stahl fears." Ante, at 16 n.2. First the record ____ contains no such "full-fledged inquiry"; and, second, any inquiry of "the other jurors" could not possibly have revealed anything about what Juror Carrero did or did not know about the putative juror misconduct. It appears, therefore, that the once strict requirements of Richman have _______ been relaxed to such an extent that a district court now has discretion, according to the majority, to conduct essentially no inquiry at all. __ -35- 35 Louisiana, No. 92-5129, 1993 WL 179275, at *4 (U.S. June 1, _________ 1993) (quoting Duncan v, Louisiana, 391 U.S. 145, 155 ______ _________ (1968)). I therefore dissent. -36- 36